1

1

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5   Estate of VALERIE YOUNG, by VIOLA
    YOUNG, as Administratrix of the
6   Estate of Valerie Young, and LORETTA
    YOUNG LEE,
7
                        Plaintiffs,
8
            -against-
9
    STATE OF NEW YORK OFFICE OF MENTAL
10  RETARDATION AND DEVELOPMENTAL
    DISABILITIES, PETER USCHAKOW,
11  personally and in his official
    capacity, JAN WILLIAMSON, personally
12  and in her official capacity, SURESH
    ARYA, personally and in his individual
13  capacity, KATHLEEN FERDINAND,
    personally and in her official
14  capacity, GLORIA HAYES, personally
    and in her official capacity,
15  DR. MILOS, personally and in his
    official capacity,
16
                        Defendants.
17
    - - - - - - - - - - - - - - - - - - - -x
18
                 75 Morton Street
19               New York, New York

20               April 18, 2008
                 10:25 A.M.
21

22

23

24

25

17

```
 1              GLORIA HAYES
 2       A.   888 Fountain Avenue, Brooklyn,
 3   New York 11208.
 4            MR. VELEZ:  Counsel and I had
 5       discussion before we began this
 6       morning related to document requests
 7       made in prior depositions.  You
 8       requested handwritten notes from
 9       Dr. Milos, if there were any, as well
10       as any handwritten notes from the
11       members of the mortality review
12       conference.
13            It is my understanding that there
14       are no handwritten notes that have
15       been found related to those requests.
16            Now, with respect to the BDC
17       policy, if any, that has been
18       developed pursuant to Judith Baer's
19       letter of November 2005, I have been
20       informed that there is no formal
21       procedure which has been put in place.
22       Instead each individual consumer is
23       treated on a case-by-case basis.  Each
24       primary physician will put into effect
25       procedures regarding the treatment of
```

                              18

1              GLORIA HAYES
2        DVT individually.  Those are medical
3        instructions left by the physician,
4        and they are the medical procedures
5        that will be followed with respect to
6        patients at risk of DVT.
7            MR. CATAFAGO:  Thank you.
8            MR. VELEZ:  You are welcome.
9            MR. CATAFAGO:  Good morning,
10       Ms. Hayes.
11           THE WITNESS:  Good morning.
12           MR. CATAFAGO:  I'm going to ask
13       you some questions this morning.  If
14       at any time you don't hear me, or if
15       you don't understand the question, let
16       me know.  I will either rephrase or
17       repeat the question so it is clear to
18       you.
19           Unless you otherwise so state, I
20       am going to assume that you have heard
21       and that you understand the question.
22       I ask you to answer the questions to
23       the extent of your fullest present
24       recollection and ability, unless you
25       are directed otherwise by your

163

1           GLORIA HAYES

2 saw a memo that you had relating to

3 Valerie?

4     A.   The last time I saw one was the

5 one I wrote instructing the staff on how

6 to deal with her.

7     Q.   When was that?

8     A.   That was in 2005.

9     Q.   Where do you keep those records?

10    A.   Where?

11    Q.   Yes.

12    A.   In my office.

13    Q.   How voluminous or expansive is

14 that file?

15    A.   Four or five pages -- probably

16 four or five pages.

17    Q.   Can you have someone fax that

18 over to us?

19        MR. VELEZ:  Are you asking about

20   memos?

21        All those memos ended up in

22   Valerie Young's file; right?

23        THE WITNESS:  No.  These were

24   memos that I personally wrote.

25    Q.   You didn't put those into

164

1              GLORIA HAYES
2     Valerie's file?
3        A.   No, no, no.  I've got them.
4            MR. VELEZ:  These are memos that
5     you wrote?
6            THE WITNESS:  Yes.
7            MR. VELEZ:  Who did you write
8     these memos to?
9            THE WITNESS:  To the staff.
10           MR. VELEZ:  What happened to
11    those memos when you distributed them
12    to the staff?
13           THE WITNESS:  They were about
14    in-service training on how to deal
15    with her.  Like, for instance, that
16    people had to go with her into the
17    bathroom.
18           MR. VELEZ:  Are those records in
19    that ended up in the file?
20           MR. CATAFAGO:  I am asking the
21    questions here.
22       Q.   You never gave them -- whether or
23    not they ended up in the file --
24           MR. CATAFAGO:  She was supposed
25    to supply all documents.  They should

165

1           GLORIA HAYES
2    have been provided.
3         MR. VELEZ:  That is correct.  If
4    she writes a memo, that goes into
5    Valerie Young's records, and all that
6    has been produced, counsel.
7         MR. CATAFAGO:  Mr. Velez, if they
8    were provided to you, if you have
9    already produced them, if you want to
10   say that, fine, but I don't believe
11   that's correct.
12        They have not been provided.  If
13   you want to make that determination
14   and put it on the record, that's fine.
15   But she has now testified she has
16   documents that no one has produced.
17   As far as I understand it, she still
18   has them in her possession.
19        MR. VELEZ:  No, that's not
20   correct.  They have been provided to
21   you already.  You have everything that
22   was in the file.
23        MR. CATAFAGO:  They certainly
24   have been asked for.  I asked for
25   every single document that was in the

166

1             GLORIA HAYES
2     possession of all defendants.
3        Q.   You were asked to bring here
4     today every single document in your
5     possession.
6        A.   I'm sorry.  I didn't understand
7     that.  I am sorry.
8            MR. VELEZ:   There's a
9     misunderstanding here.
10           MR. CATAFAGO:   Then let's
11    straighten this out.
12       Q.   Did you produce them to your
13    attorneys?
14       A.   Everything I had was sent over to
15    the director's office.
16           MR. VELEZ:   Jan Williamson.
17           MR. CATAFAGO:   Okay.
18           MR. VELEZ:   So they were
19    provided.
20       Q.   What exactly is meant by standing
21    orders to the staff?
22       A.   It's only what I wrote...
23       Q.   These three or four or five
24    pages, what was it that you wrote in those
25    three or four or five pages?

167

1                GLORIA HAYES
2      A.   I don't remember.  It wasn't
3   much.  I only have what I wrote...
4   everyone has what they wrote.  I have only
5   what I wrote...
6           MR. CATAFAGO:  Your position is,
7       counsel, it was produced?
8           MR. VELEZ:  That is correct.
9      Q.   Do you have any special license
10  or licenses in connection with your job?
11     A.   No.
12     Q.   Have you ever testified before?
13     A.   No.
14     Q.   Following the death of Valerie
15  Young, did anyone ask you for any
16  information at all about her?
17     A.   What sort of information?
18     Q.   Like about her treatment and
19  care, did anybody ask you about that,
20  whether Judith Baer, or Jan Williamson, or
21  somebody from the Commission on Quality of
22  Care?
23     A.   No.
24     Q.   Or Peter Uschakow?
25     A.   No.