UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Estate of VALERIE YOUNG by VIOLA YOUNG, as Administratrix of the Estate of Valerie Young, and in her personal capacity, SIDNEY YOUNG,

                              Plaintiffs,

-against-

STATE OF NEW YORK OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, PETER USCHAKOW, personally and in his official capacity, JAN WILLIAMSON, personally and in her official capacity, SURESH ARYA, personally and in his official capacity, KATHLEEN FERDINAND, personally and in her official capacity, GLORIA HAYES, personally and in her official capacity, DR. MILOS, personally and in his official capacity,

                              Defendants.

**ECF CASE**

**DECLARATION OF KATHLEEN FERDINAND**

07-CV-6241 (LAK)(DCF)

---

    KATHLEEN FERDINAND, states under penalty of perjury that the following is true and correct:

    1. I have been employed as a Treatment Team Leader at the Brooklyn Developmental Disability Service Center ("BDC") in Brooklyn, New York, since 1994. I am a Defendant in this action, and I was Valerie Young's treatment team leader.

    2. I submit this Declaration in opposition to Plaintiffs' Motion for Sanctions based on my personal knowledge the basis for which is my communications with

other employees at BDC and my review of documents maintained by BDC.

3. It is my understanding that Plaintiffs are claiming that certain documents, which are known as "Special Observation Logs", have been destroyed or otherwise "spoiled" and that they seek sanctions against the Defendants for failure to locate and produce these documents.

4. As set forth below, there has been a thorough search for the Special Observation Logs, and, to date, these documents have not been found.

## Background

5. BDC is a residential treatment facility operated by the New York Office of Mental Retardation and Developmental Disabilities ("OMRDD"). It currently provides care and treatment to about 300 consumers who have a primary diagnosis of mental retardation or a developmental disability that require a level of care not available in a community setting.

6. Each residential building at BDC has an interdisciplinary treatment team ("ITT"), which would include a social worker, psychologist, medical providers, and other staff who provide services to consumers.

7. Each ITT has a Treatment Team Leader whose job it is to make sure that consumers are receiving their services and that they are safe and protected. Treatment Team Leaders have both program and administrative responsibilities in connection with the ITT and work toward accomplishing the goals of the ITT. This position includes the oversight, evaluation and discipline of direct care staff.

8. As part of BDC's interdisciplinary team approach, the ITT has quarterly meetings concerning each resident, an annual re-evaluation of that resident's progress, and other meetings on an as-needed basis.

9. As part of its care and treatment of consumers, BDC maintains logs for each wing of each residential building. These Wing logs provide a summary of the activities of the consumers and staff on a particular Wing for each shift, twenty-four hours a day, seven days a week.

10. BDC also maintains a Core log that summarizes the activities of supervisors on each of three shifts for their respective units, comprised at that time of four wings, and may note events on more than one wing of a building. They reflect the rounds that are made during each shift and may state, for example, the time Ms. Young

or other consumers fell asleep on a particular night, or document an injury that occurred.

11. BDC also maintains Special Observation Logs, when needed, which are summaries of staff observing a consumer in a manner designated by that consumer's ITT. The level of supervision utilized depends on the degree of the problem. These logs are kept in composition notebooks with the assigned staff member for each shift. When one book is completed, it is placed in the supervisor's office or in the storage area on that wing.

12. I was the Treatment Team Leader for plaintiffs' decedent, Valerie Young, from approximately May 2001 to the date of her death in June 2005. During this time, she lived in Building 3-1. There were approximately 50 other consumers on unit 3-1. I supervised approximately 80 staff members during this time.

13. Ms. Young had a diagnosis of profound mental retardation in addition to psychiatric and other disorders. As I testified at my deposition, Ms. Young was ambulatory and not confined to a wheel chair as has been suggested by Plaintiffs.

### Special Observation Logs

14. In November 2004, Ms. Young was placed on fifteen minute checks that required staff to observe her and make

entries in the Special Observation Log. The purpose of this type of observation is to provide additional supervision for consumers as deemed necessary by the ITT. Ms. Young was placed on 15 minute checks at that time because of an unexplained injury. From my review of records of Ms. Young's Individualized Program Plan ("IPP"), it appears that she was on fifteen minute checks until her death in June 2005.

15. On December 21, 2004, following an incident, I learned that log entries had not been made for that date. The staff members who failed to make these entries were counseled following an investigation of the incident, and I reissued to the staff my memorandum in which I instructed them to observe Ms. Young every fifteen minutes and make entries in the log book that had been provided. Staff was also counseled for their failure to make entries on previous occasions.

16. In response to Plaintiffs' motion for sanctions, I conducted a thorough search of the unit where Ms. Young lived, the record room and any other place where I thought the Special Observation Logs might be. I also directed my residential supervisor to conduct another search of our storage area for the 15 minute log book on May 16, 2008. I asked the client coordinator and mid-level supervisor to

conduct searches as well. Notwithstanding these diligent efforts, the Special Observation Logs have not been found.

17. I did not destroy the Special Observation Logs nor did I direct anyone to do so.

KATHLEEN FERDINAND

Sworn to before me this 30th day of May, 2008

Notary Public

YVETTE RAFFO
Notary Public, State of New York
No. 41-4786455
Qualified in Queens County
Commission Expires March 30, 2009

5/30/08   Yvette Raffo