IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ESTATE OF VALERIE YOUNG, et al.,      ECF CASE

         plaintiffs,      Case No.: 07-CV-06241 (LAK)

    - against -

STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL
DISABILITIES, et al.,

         defendants.

---

# **MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION FOR SANCTIONS**

**Jonathan Bauer, Esq. and
the Catafago Law Firm, PC**
Empire State Building
350 Fifth Ave. Suite 4810
New York, NY 10118
212-239-9669
212-239-9688 (fax)
catafagolaw@verizon.net

*Attorneys for Plaintiff*

## **Summary of the Reply Argument**

Defendants in opposition fail to provide a legally sufficient explanation for their admitted loss and destruction of material evidence consistent with their failure to submit to this Court affidavits or sworn statement from the supervisory officials named in this litigation, Peter Uschakow (former Director), Jan Williamson (Deputy Director) and Jovan Milos, MD (unit physician); all of whom must factually and as a matter of law been aware of the missing documents.

The thousand or more pages of documents subjected to spoliation by defendants were a part of Valerie Young's client record within the meaning of the controlling law. See *e.g.* 42 CFR §483.410(c) (Federal standard); 14 NYCRR §633.10(a)(2) (State standard). As a matter of law, no part of the client record is "non-clinical" – all information concerning or relating to care is a part of the client record. 14 NYCRR §633.10(a)(2). The records at issue are material because they would have provided detailed information concerning the nature and extent of decedent's activities in the months immediately preceding her death. See Moving Papers, **Exhibit 16** (June 19, 2005 3:00 pm – 9:30 pm Log Entry pages).

In their demands, plaintiffs sought the decedent's treatment records from January 1, 2000, but in response the defendants pursuant to Fed. R. Civ. P. Rule 33(d) produced thousands of unwanted and irrelevant pages of documents going back to 1990. See Moving Papers **Exhibit 4**, (Interrogatory Answers and Production Responses, incorporating the demands). Defendants failed to provide an index or other identification of the produced documents and further successfully fought a motion to compel that information.

The mass of irrelevant documents obscured the fact that half or more of the records of decedent's care for the seven months prior to her death were missing.

Plaintiffs' motion raises an evidentiary issue, not a discovery issue. See *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001) Plaintiffs brought this motion pursuant to the inherent authority of this Court to regulate the proceedings. See *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 at 106-07 (2d Cir. 2002) (citing cases). This motion does not concern a discovery dispute. This is a motion seeking sanctions as a consequence of defendants' destruction of material evidence. The issue here is spoliation of evidence, not a refusal to produce – defendants admit that the documents at issue should have been produced and are missing.

The documents at issue are material to the defendants' substantial departure from accepted professional standards. *Youngberg v. Romeo*, 457 US 307, 102 S.Ct. 2452 (1982); explained and followed, *Society for Goodwill to Retarded Children v. Cuomo*, 737 F.2d 1239 (2d Cir. 1984). The official finding of the New York City Medical Examiner points to inactivity as underlying the cause of Valerie's death. The New York Commission on the Quality of Care identified the standard of care departed from and noted a lack of documentation concerning Valerie's level of activity. The missing documents recorded Valerie's level of activity with specificity as illustrated by the two pages preserved (**Exhibit 16**). The missing documents are therefore also relevant to issues of over-medication and violations of the governing regulatory standards established by the Centers for Medicare and Medicaid for Intermediate Care Facilities for the Mentally Retarded (42 CFR Part 483) and corresponding state regulations.

Sworn statements submitted in opposition to this motion together with the documents produced by subpoena and in discovery suggest that the destruction of documents was made in bad faith. Defendants have failed to account for the missing documents. The documents were by defendants own procedures to be preserved in the office of the Deputy Director. One page from the

special observation logs was faxed to the Commission on the Quality of Care on July 28, 2005, over one month after Valerie died. **Exhibit 37**. The logs were maintained in bound volumes, composition notebooks (Opposition, Ferdinand Declaration at ¶11).

Thus the missing documents were extant as late as July 28, 2005, five weeks after Valerie died and subsequent to both the complaint made by her mother, plaintiff Viola Young, and the initiation of the investigation by the Commission. Defendants' interrogatory answers were certified as complete by defendant Deputy Director Williamson (who did not submit and affidavit or other statement in opposition), all production was certified by Assistant Attorney General Velez, notwithstanding the admission by AAG Velez that he had noticed that the documents at issue were missing prior to this motion being filed. See **Exhibit 37** (Declaration of Jacques Catafago).

## Reply Argument

At the outset we note that Defendants in Opposition continuously refer to the destroyed Special Observation Logs as "non-clinical" records. This is false and an abuse of the English language. Clinical records are those which record observations of the person, as compared, for example with laboratory records (observations of specimens). See, e.g., Exhibit 38, 2007 Merriam-Webster Collegiate Dictionary 11th Ed. ("Involving or based on direct observation of the patient"); 2000 American Heritage Dictionary of the English Language 4th Ed. (same).

By any measure, the Special Observation Logs are clinical records and defendants do not, and cannot, provide contrary authority. That is because there is no contrary authority.

Furthermore there is at law no distinction between "clinical" and "non-clinical" – records that provided specific observations of the nature and extent of her activities twenty-four hours a day, every day of the week during the last months of her life. The distinction that defendants seek

3

to make in their opposition memo (clinical vs. non-clinical) is purely rhetorical. No such distinction exists in any of the governing statutes or regulations, both State and Federal. See 42 CFR §483.410(c) (Federal standard for client records in Intermediate Care Facilities for the Mentally Retarded); 14 NYCRR §633.10(a)(2) (State standard for records requiring inclusion of <u>all</u> information <u>concerning or relating</u> to the examination or treatment of the person for whom the record is kept).

**A.    This motion for sanctions concerns the spoliation of evidence – it is not a discovery dispute within the meaning of Fed. R. Civ. P. Rule 37**

Defendants assert that the instant motion concerns a discovery dispute and is governed by Fed. R. Civ. P. Rule 37 and Local Civil Rule 37.2. This is incorrect, mischaracterizes the motion and misleads this Court.

The Second Circuit has explained that motions seeking an adverse inference because of spoliation are distinct from motions seeking sanctions for breach of a discovery obligation, making a bright line distinction. *Residential Funding*, 306 F.3d 99 at 106. *Residential Funding* was "not a typical spoliation case" in that the documents were not destroyed; in *Residential Funding* the documents were not produced in time for trial. *Id*. The determination in that case was based upon the breach of a discovery obligation by non-production. In contrast, *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001) was a spoliation case seeking an adverse evidentiary inference for the destruction of documents.

This motion does not concern the breach of a discovery obligation; it concerns the destruction of evidence, over one thousand pages of the decedent's clinical record.

Furthermore, the defendants continuously assured counsel herein Valerie's entire clinical record – all documents – were produced, <u>including</u> the logbooks. We respectfully refer this Court

to the Declaration of Jacques Catafago (**Exhibit 37**) filed herewith and the moving papers herein for detailed citations to the record. The defendants in opposition do not deny and in fact acknowledge, without providing any explanation, that the subject documents no longer exist.

The assertion that reference to *Cosentino v. OMRDD*, 94-CV-04159-AKH was improper is pure sophistry. That action is a matter of public record, accessible to anyone with internet access. That case, and the case herein, also concern matters of public importance – the mistreatment of profoundly mentally retarded persons in State operated facilities and thus as a matter of public policy are not secret.

**B.    The documents destroyed were relevant and plaintiffs have been prejudiced**

The standard for relevance was established by the Second Circuit in *Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998). The *Kronisch* Court held that "the prejudiced party may be permitted an inference in his favor so long as he has produced <u>some</u> evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." *Kronisch*, 150 F.3d at 128 (emphasis added). We refer this Court to the discussion in the moving Memorandum of Law, exhibits annexed to the motion and the Declaration of Jonathan Bauer with exhibits annexed thereto for a detailed analysis of the many documents evidencing that the destroyed documents would have substantiated plaintiffs' claims.

Defendants rely upon *Skeete v. McKinsey & Co., Inc.*, 1993 WL 256659 (SDNY 1993), an unreported case that was decided prior to the now-established Second Circuit doctrine and *United States v. Grammatikos*, 633 F.2d 1013, 1019 (2d Cir. 1980), not only decided long before current doctrine was established but was also based upon an application of Fed. Crim. P. Rule 16 and 18 USC §3500 (then known as the "Jencks Act"). This Court should entirely disregard *Grammatikos* because it involved the application of a statute and rule applicable only in criminal

5

matters. This Court should disregard *Skeete* and superseded by the subsequent Second Circuit authority cited herein and in the moving papers on the propositions defendants rely upon.

Defendants assert that records which they vaguely describe as "medical" do not support the contention that Valerie was essentially confined to sitting and lying down with limited ambulation, that is, a lack of ambulation placing her at risk for DVT. Defendants do not identify any particular document, nor do they attach any particular document.

Instead, defendants rely upon self-serving deposition testimony on the substance of the case. This testimony is entirely unsupported by the documents produced. We respectfully refer this Court to the Declaration of Jonathan Bauer submitted herewith and the exhibits for a detailed analysis of the documents. The defendants' testimony, of course, is only possible because the detailed observation logs are missing.

The two pages of observations photocopied from the destroyed close observation volumes and discussed in the moving papers unambiguously describe Valerie as "sitting" for the entire period covered by those observations (3:00 pm – 9:30 pm on June 19, 2005). **Exhibit 16**. A further review of the documents not identified by defendants confirms the inference that the missing observation logs would support the plaintiffs' contentions.

Production herein included Interdisciplinary Treatment Team ("ITT") Notes apparently made by medical staff. A review of those notes that plaintiffs' counsel could identify (keeping in mind that the defendants have refused to provide any type of index to the documents produced)

does not support the defendants' position. These documents are analyzed in detail in the Bauer Declaration.

Thus, the limited contemporaneous observational records produced by the defendants and by subpoena support the inference that Valerie was kept in a condition of highly limited mobility and do not document any physician's order for staff to walk with Valerie, nor do they document staff walking with Valerie periodically. <u>See</u> Moving Papers at **Exhibit 8**, Commission Report at page 1, Bates 0095.

**C.   Spoliation was in bad faith and/or grossly negligent**

From the date that defendants first responded to the plaintiffs discovery demands up to and including the present time, the defendants and their attorneys have engaged in deceptive practices with regard to their document production and interrogatory answers. The Declaration of Jacques Catafago, Esq. (**Exhibit 37**) provides a detailed recitation of some of the many assurances made by the Assistant Attorney General in the presence of defendant OMRDD General Counsel Pawlowski that production in this case was complete.

Defense counsel, on and off the record, assured, reassured and emphatically stated that the production of documents, including close supervision logs, was complete. Assistant Attorney General Velez certified without qualification on numerous occasions that production was complete (in addition to the multiple misrepresentations made and quoted in plaintiffs' moving papers).

During the deposition of defendant Jovan Milos, plaintiffs' counsel was inquiring after the disposition of any notes made by Dr. Milos in the course of preparing the report of Valerie's death, eventually submitted to the commission:

7

        Mr. Catafago:  Counsel, to the extent those notes exist we will deal with it.

        AAG Velez:  You have been informed of <u>any and all documents</u> relating to this case.

**Exhibit 39** (Deposition of Jovan Milos at page 115, emphasis added)

During the deposition of Gloria Hayes a demand was made for any memoranda concerning Valerie's need to be ambulated. The following occurred:

        Mr. Catafago:  To the extent those documents haven't been provided - -

        AAG Velez:  Everything [has] been provided.

        Mr. Catafago:  I haven't seen such a memo.

        AAG Velez:  Then maybe it doesn't exist.

**Exhibit 40** (Deposition of Gloria Hayes at pages 176-77)

During the deposition of Kathleen Ferdinand, counsel specifically represented that the logbooks had been produced:

        Mr. Catafago:  Counselor, we haven't received any logbooks.

        AAG Velez:  Yes, you have.

        Mr. Catafago:  One-to-one models?

        AAG Velez:  At least 500 pages or - -

        Mr. Catafago:  Okay, I stand corrected.

**Exhibit 41** (Deposition of Kathleen Ferdinand at pages 250-251

Only after the instant motion was filed, AAG Velez admitted in a telephone conversation that he had noticed that the close observation logs were missing and had wondered where they were. **Exhibit 37**, Declaration of Jacques Catafago at ¶10.

Defendants in opposition admit that they have no explanation for the missing documents and fail to submit sworn statements by defendants Arya, Milos, Hayes, Williamson, Uschakow and OMRDD or its attorney, Patricia Pawlowski. Defendants nowhere provide a chain of custody for the documents that were destroyed or lost with gross negligence. They do not explain or describe their retention policies and procedures and do not explain how on July 28, 2005 they were able to fax pages from the Special Observation Logs over a month after Valerie died. See **Exhibit 52**, faxed copy of log pages.

**D.    Conclusion**

For all the reasons set forth herein Plaintiffs respectfully request that this Court grant this Motion and issue an order in the form requested, and for any such further and different relief as to which this Court may deem just and appropriate.

Dated:   New York, New York
         June 6, 2008

                                        Respectfully submitted,

                                        **Catafago Law Firm, PC**
                                        **and Jonathan Bauer, Esq.**
                                        Empire State Building
                                        350 Fifth Ave. Suite 4810
                                        New York, NY 10118
                                        212-239-9669
                                        212-239-9688 (fax)
                                        catafagolaw@verizon.net

                                        s/ _____
                                        By: Jonathan Bauer