1

2  UNITED STATES DISTRICT COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  Estate of VALERIE YOUNG, by VIOLA
   YOUNG, as Administratrix of the
6  Estate of Valerie Young, and LORETTA
   YOUNG LEE,
7
                    Plaintiffs,
8
           -against-
9
   STATE OF NEW YORK OFFICE OF MENTAL
10 RETARDATION AND DEVELOPMENTAL
   DISABILITIES, PETER USCHAKOW,
11 personally and in his official
   capacity, JAN WILLIAMSON, personally
12 and in her official capacity, SURESH
   ARYA, personally and in his individual
13 capacity, KATHLEEN FERDINAND,
   personally and in her official
14 capacity, GLORIA HAYES, personally
   and in her official capacity,
15 DR. MILOS, personally and in his
   official capacity,
16
                    Defendants.
17
   - - - - - - - - - - - - - - - - - - - -x
18
                75 Morton Street
19              New York, New York

20              April 18, 2008
                10:25 A.M.
21

22

23

24

25

1

2          DEPOSITION of GLORIA HAYES, one of the

3    Defendants in the above-entitled action,

4    held at the above time and place, taken

5    before Gretchen A. Milton, a Shorthand

6    Reporter and Notary Public of the State of

7    New York, pursuant to the Federal Rules of

8    Civil Procedure, Notice and stipulations

9    between Counsel.

10

11

12              *      *      *

13

14

15   APPEARANCES:

16
         CATAFAGO LAW FIRM, P.C.
17             Attorneys for Plaintiffs
               350 Fifth Avenue
18             New York, New York 10118

19       BY:  JACQUES CATAFAGO, ESQ.

20

21       STATE OF NEW YORK
         OFFICE OF THE ATTORNEY GENERAL
22       ANDREW M. CUOMO
               Attorneys for Defendants
23             120 Broadway
               New York, New York 10271-0332
24
         BY:  JOSE L. VELEZ, ESQ.
25

57

```
1                    GLORIA HAYES

2        A.    No.

3        Q.    Did you ever see any documents

4    reflecting that she had been ambulated

5    prior to her death?

6        A.    Did I see any documents?

7        Q.    Yes.

8        A.    I don't remember seeing any

9    documents.

10       Q.    Were you ever asked anything with

11   regard to the amount of physical mobility

12   she had in the month before her death?

13   Did anyone ever ask you questions about

14   that, other than your counsel?

15       A.    No.

16       Q.    Are there any other patients

17   presently in the wing who use wheelchairs

18   for any purpose?

19       A.    Yes.

20       Q.    How many?

21       A.    On that particular wing?

22       Q.    Yes.

23       A.    I have five or six.

24       Q.    Are you aware of any written

25   orders that any physician at BDC --
```

58

```
 1                 GLORIA HAYES
 2    whether Dr. Milos or anyone else -- has
 3    ever issued with regard in any
 4    wheelchair-using patient as to the
 5    physical activity needed, a standing
 6    order?
 7         A.   I am sorry.  Could you rephrase
 8    that?
 9              MR. VELEZ:  Objection to the
10         form.
11         Q.   Are you aware of any standing
12    order issued by any physician, including
13    but not limited to Dr. Milos, with regard
14    to moving patients when they are in
15    wheelchairs, moving them about?
16              MR. VELEZ:  Are you asking about
17         a standing order as to each particular
18         consumer?
19              MR. CATAFAGO:  As to any of the
20         consumers.
21         A.   On this particular wing or unit
22    itself?
23         Q.   On the unit.
24         A.   Yes.
25         Q.   Are you aware whether any such
```

59

```
1                    GLORIA HAYES

2    orders were ever issued for Valerie?

3         A.   It's hard to recall.  It's been a

4    while.  It's hard to...

5         Q.   Do you recall any --

6         A.   Do I recall any what?

7         Q.   -- standing orders?

8         A.   With regard to her being

9    ambulated?

10        Q.   Right.

11             Did the doctor ever write an

12   order to say to do it?

13             MR. VELEZ:  Objection.  What

14        doctor?  Objection to the form.

15        A.   I don't remember.

16        Q.   Do you remember whether or not

17   Dr. Milos or anyone else ever wrote any

18   orders for anyone -- not just you -- for

19   anyone at BDC -- to move Valerie around?

20        A.   For Valerie?

21        Q.   Yes.

22        A.   Other than myself?

23        Q.   Yes.  Do you know if he told

24   anyone that orally or in writing?

25             MR. VELEZ:  If you remember.
```

60

1                    GLORIA HAYES

2           THE WITNESS:  Excuse me?

3           MR. CATAFAGO:  I would like an

4     answer to the question first.

5           MR. VELEZ:  If you remember.

6     A.   I don't remember.

7           MR. CATAFAGO:  Do you want to

8     take a break?

9           MR. VELEZ:  Yes.

10          (A recess was taken.)

11     Q.   I would like you to look at what

12     has been marked as Hayes Exhibit E.  It is

13     the document Bates stamped Young 8798

14     through 8800.

15          MR. CATAFAGO:  This is only copy

16     I have.

17     Q.   I want to show you this Minor

18     Occurrence Report, and ask you whether or

19     not you recognize it.

20     A.   I don't know about this one.

21     Q.   Take a look for the moment at the

22     document and tell me whether or not you

23     remember the occurrence that's described

24     in there.

25          (Witness complies.)

164

```
1              GLORIA HAYES

2    Valerie's file?

3       A.   No, no, no.  I've got them.

4            MR. VELEZ:  These are memos that

5    you wrote?

6            THE WITNESS:  Yes.

7            MR. VELEZ:  Who did you write

8    these memos to?

9            THE WITNESS:  To the staff.

10           MR. VELEZ:  What happened to

11    those memos when you distributed them

12    to the staff?

13           THE WITNESS:  They were about

14    in-service training on how to deal

15    with her.  Like, for instance, that

16    people had to go with her into the

17    bathroom.

18           MR. VELEZ:  Are those records in

19    that ended up in the file?

20           MR. CATAFAGO:  I am asking the

21    questions here.

22       Q.   You never gave them -- whether or

23    not they ended up in the file --

24           MR. CATAFAGO:  She was supposed

25    to supply all documents.  They should
```

165

```
 1              GLORIA HAYES
 2   have been provided.
 3        MR. VELEZ:  That is correct.  If
 4   she writes a memo, that goes into
 5   Valerie Young's records, and all that
 6   has been produced, counsel.
 7        MR. CATAFAGO:  Mr. Velez, if they
 8   were provided to you, if you have
 9   already produced them, if you want to
10   say that, fine, but I don't believe
11   that's correct.
12        They have not been provided.  If
13   you want to make that determination
14   and put it on the record, that's fine.
15   But she has now testified she has
16   documents that no one has produced.
17   As far as I understand it, she still
18   has them in her possession.
19        MR. VELEZ:  No, that's not
20   correct.  They have been provided to
21   you already.  You have everything that
22   was in the file.
23        MR. CATAFAGO:  They certainly
24   have been asked for.  I asked for
25   every single document that was in the
```

166

1                GLORIA HAYES

2      possession of all defendants.

3      Q.   You were asked to bring here

4   today every single document in your

5   possession.

6      A.   I'm sorry.  I didn't understand

7   that.  I am sorry.

8          MR. VELEZ:  There's a

9      misunderstanding here.

10          MR. CATAFAGO:  Then let's

11      straighten this out.

12      Q.   Did you produce them to your

13   attorneys?

14      A.   Everything I had was sent over to

15   the director's office.

16          MR. VELEZ:  Jan Williamson.

17          MR. CATAFAGO:  Okay.

18          MR. VELEZ:  So they were

19      provided.

20      Q.   What exactly is meant by standing

21   orders to the staff?

22      A.   It's only what I wrote...

23      Q.   These three or four or five

24   pages, what was it that you wrote in those

25   three or four or five pages?

179

```
1                 GLORIA HAYES

2    checks of the consumers assigned to their

3    group if they are not engaged in

4    activities in the wing," what does mean

5    that?

6        A.   It's a requirement that they are

7    supposed to see them every 15 minutes.

8    They see them constantly because they are

9    in the sitting area with the group of

10   consumers.

11       Q.   Next item, item 5:  "Ensures

12   through review of wing core logs that any

13   untoward event involving any consumer,

14   including absence during 15-minute visual

15   check, is logged in with resulting staff

16   action taken," do you see that?

17       A.   Yes.

18       Q.   Do you know if that was done for

19   Valerie?

20       A.   I'm sure it was.

21       Q.   Do you know of any untoward

22   events that were not logged?

23       A.   They logged everything.

24       Q.   They logged everything?

25       A.   As far as I know.
```

180

```
 1              GLORIA HAYES
 2      Q.   So every incident or problem with
 3   Valerie Young should be logged?
 4      A.   Yes.
 5      Q.   No. 6:  "Assigns direct care
 6   staff members to participate in treatment
 7   programs with maximum consistency for
 8   extended periods of time," what does that
 9   mean?
10      A.   That means like if they have
11   active treatment on the wing, that they
12   have a certain amount of time to engage in
13   that.  Which they do.  They have time
14   allotted to that during program time.
15   Time is allotted for doing recreation, and
16   there's time for doing wing activities.
17   You know, there are certain amounts of
18   time to engage in everything.  That is
19   formal.
20      Q.   Did Valerie get all that?
21      A.   Yes.
22      Q.   Did you ever notice that her legs
23   and feet were swollen?
24      A.   I can't tell you when, but yes, I
25   remember that.
```