UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

Estate of VALERIE YOUNG by VIOLA YOUNG,  :
as Administratrix of the Estate of Valerie Young,
and in her personal capacity, SIDNEY YOUNG,  :
and LORETTA YOUNG LEE,

                                                :

                     Plaintiffs,                     07-CV-6241 (LAK)(DCF)
                                           :             ECF Case

      -against-                           :

STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL       :
DISABILITIES, PETER USCHAKOW, personally
and in his official capacity, JAN WILLIAMSON,  :
personally and in her official capacity, SURESH
ARYA, personally and in his official capacity,   :
KATHLEEN FERDINAND, personally and in her
official capacity, GLORIA HAYES, personally and :
in her official capacity, DR. MILOS, personally and
in his official capacity,                       :

                    Defendants.      :

----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

                                ANDREW M. CUOMO
                                Attorney General of the
                                 State of New York
                                Attorney for Defendants
                                 120 Broadway, 24th Floor
                                 New York, New York 10271
                                 (212) 416-8164

JOSE L. VELEZ
Assistant Attorney General
  of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I      PLAINTIFFS' SECTION 1983 SUBSTANTIVE DUE PROCESS CLAIM
             SHOULD BE DISMISSED BECAUSE MS. YOUNG'S TREATMENT DID
             NOT SUBSTANTIALLY DEPART FROM PROFESSIONAL STANDARDS
             AND DID NOT SHOCK THE CONSCIENCE . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    Substantive Due Process Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
       B.    Defendants did not Substantially Depart From the Accepted Judgment.
             Practice or Standards of Their Profession . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT II     PLAINTIFFS CANNOT DEMONSTRATE THE PERSONAL
             INVOLVEMENT OF BDC DEFENDANTS USCHAKOW, ARYA
             AND WILLIAMSON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT III    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
             ON PLAINTIFFS' ADA AND REHABILITATION ACT CLAIMS . . . . . . . . 17

       A.    ADA and Rehabilitation Act Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       B.    Defendants did not Discriminate Against Ms. Young on the Basis of her
             Disability, or Otherwise Deny her the Benefit of the Services, Programs
             or Activities of BDC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT IV     DEFENDANTS ARE EITHER ABSOLUTELY IMMUNE FROM SUIT
             OR ENTITLED TO QUALIFIED IMMUNITY FROM SUIT FOR
             DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

       A.    The OMRDD and BDC Defendants in Their Official Capacities are Entitled
             to Absolute Immunity for Claims Arising Under 42 U.S.C. § 1983 . . . . . . . . . . 20
       B.    Defendants Sued in Their Individual Capacity are Entitled to Qualified
             Immunity For Section 1983 Claims for Damages . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

i

**Cases**                                                                      **Page**

**Federal Cases**

Anderson v. Creighton,
        483 U.S. 635, 107 S. Ct. 3034 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.,
        189 F.3d 208 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ayers v. Coughlin,
        780 F.2d 205) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Benjamin v. Schwartz,
        299 F. Supp. 2d 196 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Black v. Coughlin,
        76 F.3d 72 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Blyden v. Mancusi,
        186 F.3d 252 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bowers v. Hardwick,
        478 U.S. 186, 106 S. Ct. 2841) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cartier v. Lussier,
        955 F.2d 841 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Catanzaro v. Weiden,
        188 F.3d 56 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Celotex Corp. v. Catrett,
        477 U.S. 317,  106 S. Ct.662 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Collins v. Harker Heights,
        503 U. S. 115, 112 S. Ct. 1061 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Colon v. Coughlin,
        58 F.3d 865 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Daniels v. Williams,
        474 U.S. 327. 106 S. Ct. 662 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Doe v. New York City Department of Social Services,
        649 F.2d 134 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Cases**                                                                      **Page**

Doe v. Pfrommer,
    148 F.3d 73 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Dube v. State University of New York
    900 F.2d 587 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Eng v. Coughlin,
    858 F.2d 889 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Farrell v. Burke,
    449 F.3d 470 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Feurtado v. City of New York,
    337 F. Supp. 2d 593 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fisk v. Letterman,
    2007 U.S. Dist. LEXIS 23131 (S.D.N.Y. Mar. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . 25

Flight v. Gloeckler,
    68 F.3d 61 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Francis v. Coughlin,
    891 F.2d 43 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,
    280 F.3d 98 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Goenaga v. March of Dimes Birth Defects Foundation,
    51 F.3d 14 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Green v. City of New York,
    2007 U.S. Dist. LEXIS 65842 (S.D.N.Y. Sept. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 20

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hemmings v. Gorczyk,
    134 F.3d 104 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Henrietta D. v. Bloomberg,
    331 F.3d 261 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Jermosen v. Smith,
    945 F.2d 547) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Kaminsky v. Rosebblum,
    929 F.2d 933 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Cases**                                                                                        **Page**

Kerman v. City of New York,

261 F.3d 229 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Kulak v. City of New York,
        88 F.3d 63 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 24

Loria v. Gorman,
        306 F.3d 1271 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Malley v. Briggs,
        475 U.S. 335,  106 S. Ct. 1092 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Matsushita Electric Industrial Co. v.  "Zenith Radio Corp.,
        475 U.S. 574, 106 S. Ct. 1348 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

McKinnon v. Patterson,
        568 F.2d 930 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pennhurst State School & Hospital v. Halderman,
        465 U.S. 89, 104 S. Ct. 900 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Podell v. Citicorp Diners Club, Inc.,
        112 F.3d 98 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,
        506 U.S. 139, 113 S. Ct. 684 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Robinson v. Via,
        821 F.2d 913 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Rodriguez v. City of New York,
        197 F.3d 611 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Romeo v. Youngberg,
        644 F.2d 147 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Saucier v.Katz,
        533 U.S. 194, 121 S. Ct. 2151 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

Society for Good Will to Retarded Children, Inc. v. Cuomo,
        902 F.2d 1085 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Stephenson v. Doe,
        332 F.3d 68 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Taylor v. Brentwood Union Free Sch. District,
        143 F.3d 679 (2d Cir. 1998), cert. denied, 525 U.S. 1139, 119 S. Ct. 1027 (1999) . . . . 12
**Cases**                                                                                                **Page**

Tocker v. Philip Morris Companies, Inc.,
        470 F.3d 481 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Trotman v. Palisades Interstate Park Commission,
        557 F.2d 35 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Salerno,
        481 U.S. 739, 107 S. Ct. 2095 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Weinstock v. Columbia University,
        224 F.3d 33 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

White v. Napoleon,
        897 F.2d 103 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Will v. Michigan Department of State Police,
        491 U.S. 58, 109 S. Ct 2304 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Williams v. Smith,
        781 F.2d 319 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13, 14

Youngberg v. Romeo,
        457 U.S. 307, 102 S.Ct 2452 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 11, 24


**Federal Statutes**

Americans with Disabilities Act, 42 U.S.C. §12131, et seq.  . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 17

Fed. R. Civ. P. 56(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rehabilitation Act, 29 U.S.C.  § 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Rehabilitation Act, 29 U.S.C.  § 794(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 18

Under 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, defendants State of New York Office of Mental Retardation and Developmental Disabilities ("OMRDD"), Brooklyn Developmental Disabilities Service Office ("BDDSO" or "BDC") Director Peter Uschakow, Deputy Director of Operations Jan Williamson, Residential Unit Supervisor Gloria Hayes, Treatment Team Leader Kathleen Ferdinand and Medical Doctor Jovan Milos, and Hudson Valley Developmental Disabilities Services Office Deputy Director of Operations Suresh Arya (collectively "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Valerie Young ("Ms. Young") was a 49-year old woman who had resided at the BDC since 1990 until her death on June 19, 2005.  On July 6, 2007, plaintiffs Viola Young, as Administratrix of the Estate of Valerie Young and in her personal capacity, Sidney Young and Loretta Young Lee ("Plaintiffs") commenced this action against defendants alleging that Ms. Young died as a result of Defendants' alleged violations of her rights secured by the Fourteenth Amendment of the United States Constitution and/or the American With Disabilities Act, 42 U.S.C. § 12131, et seq. ("ADA"), and/or the Rehabilitation Act, 29 U.S.C. § 794(a).  See Plaintiffs' Complaint, dated June 29, 2007 ("Pltffs' Cmplt."), at ¶ 1, annexed to Declaration of Jose L. Velez, dated August 1, 2008 ("Velez Decl."), under Exhibit Tab A.  Specifically, Plaintiffs contend that on June 19, 2005, Ms. Young, who suffered from profound mental retardation and other psychiatric and mental conditions, died from a pulmonary embolism caused by deep vein thrombosis as the result of inactivity during the last months of her life.  Plaintiffs contend she was largely confined to a wheelchair or was otherwise maintained without mobility as a result of sedative medication and untreated and/or inadequately treated insomnia, untreated and/or inadequately treated back pain and untreated and/or inadequately treated drop foot.  See Joint Pretrial Order, dated July 7, 2008, annexed to Velez Decl. Under Exhibit Tab C, at p. 2

under subsection A. Plaintiff's Contentions.

As demonstrated below, Plaintiffs' Section 1983 claim of substantive due process violations and/or discrimination claim brought pursuant to the ADA and/or the Rehabilitation Act are without evidentiary support and fail as a matter of law. First, Plaintiffs' Section 1983 substantive due process claims should be dismissed because they will be unable to prove that Ms. Young's treatment substantially departed from the accepted judgment, practice or standards of Defendants' professions, or that Defendants were deliberately indifferent to her. To the extent that Plaintiffs seek to impose supervisory liability on Defendants Uschakow, Arya and Williamson for these claims, they will be unable to establish the requisite personal involvement. Likewise, this claim must fail as to Defendants Ferdinand, Hayes and Dr. Milos, who were members of Ms. Young's treatment team at the time of the events alleged in the Complaint. It is well settled that the professional judgment standard that applies to the analysis of Plaintiffs' substantive due process rights is not violated if experts merely disagree as to treatment decisions that were actually made and that courts must show deference to the judgment exercised by a qualified professional. Likewise, Plaintiffs will not be able to show that Ms. Young was discriminated against or otherwise had any rights violated under the ADA and/or the Rehabilitation Act. Finally, the Complaint should be dismissed as to the OMRDD and BDC Defendants sued in their official capacities because they are entitled to immunity under the Eleventh Amendment and as to the Defendants who were sued in their individual capacity as they are entitled to qualified immunity.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants rely on their Rule 56.1 Statement of undisputed facts in support of their motion for summary judgment ("R. 56.1 Stmt.") filed separately as required under Local Civil Rule 56.1.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment "shall be rendered forthwith" if the movant shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 n.4 (1986); see also Tocker v. Philip Morris Companies, Inc., 470 F.3d 481, 486-87 (2d Cir. 2006); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); see also Celotex, 477 U.S. at 325; Feurtado v. City of New York, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004). Where the moving party meets that burden, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Accordingly, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id. "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations and citations omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) (nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga, 51 F.3d at 18 (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible").

In the present case, plaintiffs have failed to adduce any evidence, other than unsubstantiated speculation, to support their claims of substantive due process violations and/or discrimination claim brought pursuant to the ADA and/or the Rehabilitation Act. Such a basis is insufficient to survive summary judgment.

## ARGUMENT

### POINT I

**PLAINTIFF'S § 1983 SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE DISMISSED BECAUSE MS. YOUNG'S TREATMENT DID NOT SUBSTANTIALLY DEPART FROM PROFESSIONAL STANDARDS AND DOES NOT SHOCK THE CONSCIENCE**

Plaintiffs allege violations of Ms. Young's substantive due process rights secured by the Fourteenth Amendment of the United States Constitution. This claim concerns the care and treatment provided to Ms. Young at the BDC for her psychiatric and medical conditions, through the prescription of medications to treat her psychiatric condition and related aggressive behavior, and the use of a wheelchair due to her reduced mobility related to a gait impairment. This claim must be dismissed because the judgment Defendants exercised in their care and treatment of Ms. Young that did not substantially depart from the accepted judgment, practice or standards of their profession, or show deliberate indifference, and cannot reasonably be said to shock the conscience of a trier of fact.

### A.    Substantive Due Process Standard

Plaintiffs' Substantive Due Process claims rest upon the Supreme Court's line of cases which interprets the guarantee of "due process of law" found in the Fifth and Fourteenth Amendments to the United States Constitution to include a substantive component, which forbids the government to infringe certain "fundamental" liberty interests at all, no matter what

4

process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.  See, e.g., Collins v. Harker Heights, 503 U.S. 115, 125, 112 S Ct. 1061, 1068 (1992); United States v. Salerno, 481 U.S. 739, 745 (1987); Bowers v. Hardwick, 478 U.S. 186, 191, 106 S. Ct. 2841, 2844 (1986). "As a general matter, the Supreme Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended." Collins, 503 U.S. at 117.

To succeed on their substantive due process claims, Plaintiffs must show that Defendants' actions were arbitrary, conscience-shocking, or oppressive in a constitutional sense and not merely incorrect or ill-advised.  Catanzaro v. Weiden, 188 F.3d 56, 64 (2d Cir. 1999). The Due Process Clause is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property.  Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986).  In the context of a state's affirmative duties to individuals who are in the custody or care of the state, officials may be liable under Section 1983 only if their omissions were a substantial factor leading to the denial of a constitutionally protected liberty or property interest, and the officials displayed a mental state of deliberate indifference with respect to those rights.  Doe v. New York City Dep't of Social Servs., 649 F.2d 134, 141 (2d Cir. 1981).

In addition, a professional will not be held liable under Section 1983 for treatment decisions unless such decisions are "such a substantial departure from accepted judgment, practice or standards as to demonstrate that he actually did not base the decision on such judgment." Youngberg v. Romeo, 457 U.S. 307, 322-23, 102 S. Ct. 2452, 2461-62 (1982). This standard requires more than simple negligence on the part of the doctor but less than deliberate indifference.  Kulak v. City of New York, 88 F.3d 63, 75 (2d Cir. 1996). The professional judgment standard is not violated if experts merely disagree with care or treatment decisions that were actually made, or think that another course of conduct would have been better. Youngberg v. Romeo, 457 U.S. at 321, 102 S. Ct. at 2461.

In <u>Youngberg v. Romeo</u>, 457 U.S. at 324, 102 S. Ct. at 2462, the United States Supreme Court considered for the first time the substantive rights of mentally retarded persons who reside in state facilities under the Due Process Clause of the Fourteenth Amendment to the Constitution.  In that regard, the <u>Youngberg</u> Court held that such persons have a constitutionally protected liberty interest to safety, freedom from restraint and minimally adequate training.  <u>Id.</u>, at 322, 324, 2461-62.  The <u>Youngberg</u> Court also noted in dicta that such persons have constitutionally protected rights to adequate food, shelter, clothing and medical care.  <u>Id.</u> at 324. Although <u>Youngberg</u> specifically applied to involuntarily committed individuals, the Second Circuit has since made clear that the rights outlined above apply to mentally retarded individuals who are both voluntary and involuntary residents of a state facility.  <u>See</u> <u>Society for Good Will to Retarded Children, Inc. v. Cuomo</u>, 737 F.2d 1239, 1245-46 (2d Cir. 1984).

In determining whether the State has met its constitutional obligations to mentally retarded residents of state facilities, decisions concerning the care of such individuals that are made by an appropriate professional are presumed valid and may only be challenged if the decision "is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."  <u>Youngberg</u>, 457 U.S. at 323, 102 S. Ct. at 2462.  To be clear, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised.  It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."  <u>Id</u>. at 321 (quoting <u>Romeo v. Younberg</u>, 644 F.2d 147, 178 (3d Cir. 1980)). The professional judgment standard determines whether a particular decision has substantially met professionally accepted minimum standards.  <u>Society for Good Will</u>, at 1248.  Accordingly, it is error for a court to determine that the professional judgment standard is not met if experts disagree with care or treatment decisions that were actually made, or think that another course of conduct would have been better.  <u>Id</u>.  A "professional" decisionmaker is a person competent,

whether by education, training or experience, to make the particular decision at issue. Youngberg, at 323, 2662 n.30.

### B. Defendants Did Not Substantially Depart From The Accepted Judgment, Practice Or Standards Of Their Profession

Plaintiffs contend that on June 19, 2005, Ms. Young died from a pulmonary embolism caused by deep vein thrombosis as the result of inactivity during the last months of her life, because she was largely confined to a wheelchair or was otherwise maintained without mobility as a result of sedative medication and untreated and/or inadequately treated insomnia, untreated and/or inadequately treated back pain and untreated and/or inadequately treated drop foot. See Joint Pretrial Order at p. 2. However, Plaintiffs cannot demonstrate, as they must, that the judgment employed by the BDC Defendants in their care and treatment of Ms. Young in the months preceding her death departed in any substantial way from the accepted judgment, practice or standards for providing services to persons with mental retardation or developmental disabilities. Indeed, courts must show deference to the judgment exercised by a qualified professional. Youngberg v. Romeo, 457 U.S. at 321-323, 102 S. Ct. 2461-62.

It is undisputed that BDC is a residential treatment facility, not a hospital or acute care facility, operated by OMRDD for persons with severe or profound mental retardation. It serves individuals who have a primary diagnosis of mental retardation or a severe developmental disability, or a profound lack of skills, that affect their ability to communicate or live in the community. 56.1 Stmt. at ¶ 14. Although BDC is not a hospital, its staff includes psychiatrists, psychologists, physicians, nurses, dentists, social workers, physical and occupational therapists. There are presently five medical doctors at BDC who are responsible for the day-to-day care of the consumers. If a consumer requires special attention, he or she is referred to a medical specialist outside the facility. 56.1 Stmt. at ¶ 16. BDC provides care to its consumers twenty-four hours a day, seven days a week. 56.1 Stmt. at ¶ 26.

Ms. Young's mental and medical health status was closely monitored by an

Interdisciplinary Treatment Team ("ITT") comprised of a psychiatrist and/or psychologist, medical providers, social worker and other staff who provide direct care, recreation, speech, physical therapy and occupational therapy. 56.1 Stmt. at ¶ 20. Her care and treatment is well documented on her Developmental Plan ("DVP") which contained all of her records in one comprehensive binder. 56.1 Stmt. at ¶ 33. Ms. Young's DVP included a copy of her Individualized Program Plan ("IPP"), ITT notes, behavior management program, consultations, medication request reports, lab reports, pharmacy, charts, dental, dietary, leisure time notes, recreation, occupational therapy, psychology, physical therapy, and social worker notes. 56.1 Stmt. at ¶ 33. At the time of her death on June 19, 2005, Ms. Young's Developmental Plan ("DVP") consisted of over 10,000 pages documenting her care and treatment at BDC. 56.1 Stmt. at ¶ 71.

Defendants Ferdinand, Hayes and Milos were part of the ITT, as was plaintiff Viola Young. 56.1 Stmt. at ¶¶ 53, 64, 70, 75. The ITT prepared an IPP for Ms. Young which contained information from the annual assessments of the various clinical disciplines. These assessments were the basis for developing a program to address Ms. Young's needs. 56.1 Stmt. at ¶ 29. The ITT reviewed the IPP on an annual and quarterly basis, and also met on an as needed basis. Ms. Young's mother was present at most of these meetings during the time that Dr. Milos was Ms. Young's physician. 56.1 Stmt. at ¶ 30. The ITT also sent written requests to Viola Young for consent for matters related to Ms. Young's care and treatment. 56.1 Stmt. at ¶ 31.

As set forth below, and contrary to plaintiffs' contentions, the record demonstrates that Defendants addressed all of Ms. Young's medical concerns. Plaintiffs have adduced no evidence that Ms. Young was confined to a wheelchair or was otherwise maintained without mobility as a result of sedative medication and untreated and/or inadequately treated insomnia, untreated and/or inadequately treated back pain and untreated and/or inadequately treated drop foot.

Likewise, there is no evidence that any of the treatment decisions by defendants were "a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Youngberg, at 323, 2462

To the contrary, despite her many infirmities, Ms. Young had a generally stable medical health status. 56.1 Stmt. at ¶ 74. She had a history of seizure disorder, but that condition was well controlled with medication. Id. She suffered from a neurological condition that affected her gait for which she saw a neurologist yearly or as needed. Id. She had bilateral feet edema or swelling that was managed with leg elevation. Id. She suffered from constipation for which she received medication. Id. Her mental health condition was treated with medication which sometimes required an adjustment by the ITT, which included Ms. Young's mother. 56.1 Stmt. at ¶ 75. Ms. Young had exhibited aggressive behavior throughout her lifetime. 56.1 Stmt. at ¶ 1,

Notwithstanding all efforts to maintain Ms. Young's health, during the first few months of 2005, Ms. Young fell frequently and the Treatment Team became concerned that she was going to fall and hit her head. 56.1 Stmt. at ¶ 79. In order to address this concern, on April 7, 2005, Ms. Young was seen for her yearly neurology evaluation and a chronic gait disorder was noted with left foot drop and high steppage gait. 56.1 Stmt. at ¶ 80. On April 20, 2005, the ITT held a Special Case Conference to discuss steps to protect Ms. Young from falling. 56.1 Stmt. at ¶ 82.

During this meeting, Dr. Milos stated that he believed that the most recent falls were caused in part by medications which are sedating, and the left foot drop which had become more pronounced. He also stated that when Ms. Young did not sleep at night her unsteadiness was more pronounced the next day. 56.1 Stmt. at ¶ 82. Dr. Milos recommended reducing the dosage of Zyprexa, a neuroleptic medication that was used to stabilize her mood and behavior related to her schizoaffective disorder,  because he thought that the medication contributed to Ms. Young's

recent falls. 56.1 Stmt. at ¶ 84.

The ITT also recommended at the Special Case Conference that Ms. Young be issued a wheelchair to transport her between buildings, to out-of-facility appointments and outings into the community. The wheelchair was issued to Ms. Young on April 27, 2005. 56.1 Stmt. at ¶ 85. At the ITT's request, Ms. Young was also measured and issued a protective Danmar halo helmet to protect her head in case of a fall. 56.1 Stmt. at ¶ 87. The ITT also recommended sending Ms. Young to physical therapy, with an evaluation for possible orthosis (plastic splint to provide support) for the left foot. Dr. Milos referred Ms. Young for a physical therapy evaluation on or about April 27, 2005. 56.1 Stmt. at ¶ 88. On May 2, 2005, Ms. Young was evaluated and recommended for physical therapy two times per week, attending on Tuesdays and Thursdays, to assist her with walking. At physical therapy, she received mat exercises, ambulation exercise, and range of motion exercises for both the upper and lower extremities. 56.1 Stmt. at ¶ 89. Direct care staff were also instructed to make sure that Ms. Young was ambulated with one or two staff walking with her. 56.1 Stmt. at ¶¶ 59, 65, 66.

On May 2, 2005, Ms. Young also had X-rays of the lumbar spine to evaluate her gait disturbance and foot drop, both of which were negative. 56.1 Stmt. at ¶ 91. An EMG had been scheduled for June 30, 2005 to also evaluate her gait disturbance and foot drop. 56.1 Stmt. at ¶ 92. On May 27, 2005, Dr. Milos noted that Ms. Young had bilateral ankle edema (swelling), but no calf tenderness and a negative Homann's sign (a physical examination test for deep vein thrombosis). Her edema was assumed to be positional (i.e., her legs in a prolonged dependent position) and leg elevation during rest periods was recommended. 56.1 Stmt. at ¶ 93.

This record of treatment to address Ms. Young's medical concerns belies plaintiffs' claim that her substantive due process rights were violated. The claim amounts to nothing more than a non-actionable disagreement with the Treatment Team, in particular Dr. Milos', professional judgment and treatment decisions. The Second Circuit has stated that "a doctor will not be liable

under § 1983 for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment.'" Kulak v. City of New York, 88 F.3d at 75 (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982) (alteration in original)); accord White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990) ("A decision of the institution's staff is presumed valid unless it is shown to be a substantial departure from accepted professional judgment, practice or standards." (internal citations and quotation marks omitted)).

Plaintiffs provide no proof that Ms. Young's pulmonary embolism was caused by inactivity caused by being "largely confined to a wheelchair or [] otherwise maintained without mobility" during the last months of her life (see Joint Pretrial Order, at p. 2 under subsection A. Plaintiffs' Contentions), because the record establishes that Ms. Young was ambulatory in the months prior to her death. 56.1 Stmt. ¶¶ 39, 42, 51, 59, 60, 65, 66, 67, 72,  102, 109.  Plaintiffs' reliance on the "suspicion" of an investigator for the New York State Commission on the Quality of Care and Advocacy for Person with Disabilities that Ms. Young "may have spent" extended periods of time in her wheelchair (see, generally, Joint Pretrial Order, at p. 2), is insufficient to prove that Ms, Young was kept immobilized.  In the weeks prior to her death, Ms. Young received physical therapy and was ambulatory.  Indeed, plaintiffs have admitted that they observed Ms. Young walking with the assistance of BDC staff ( 56.1 Stmt. at ¶ 95), as did defendants. 56.1 Stmt. ¶¶ 39, 42, 51, 59, 60, 65, 66, 67, 72,  102.

Moreover, Ms. Young had not been diagnosed with DVT because she had none of the accepted risk factors or symptoms that are recognized to increase the likelihood of a diagnosis of DVT.  56.1 Stmt. at ¶ 101, 106.  The opinion of defendants' expert in emergency medicine, Dr. Diane M. Sixsmith, that Ms. Young's medical care providers could not have reasonably anticipated that she would develop DVT and a fatal pulmonary embolism, 56.1 Stmt. at ¶ 104, is echoed by the opinion of plaintiffs' expert in forensic pathology, Dr. Richard P. Bindie, that

"DVT is frequently asymptomatic or the symptoms are not classical.  The first sign of DVT can be pulmonary emboli or sudden death."  56.1 Stmt. at ¶ 105.  In sum, Ms. Young had none of the currently accepted risk factors or symptoms that are recognized to increase the likelihood of a diagnosis of DVT.  According to Dr. Sixsmith, the oversight, monitoring, evaluation, and treatment of Ms. Young by BDC staff was thorough and according to the accepted standard of care.  56.1 Stmt. at ¶ 104.

Accordingly, as a matter of law and based on the uncontroverted evidence, defendants are entitled to summary judgment on plaintiffs' substantive due process claim.

## POINT II

### PLAINTIFF CANNOT DEMONSTRATE THE PERSONAL INVOLVEMENT OF BDC DEFENDANTS USCHAKOW, ARYA AND WILLIAMSON

To state a claim against the BDC Defendants in their individual capacities, Plaintiffs must present evidence that they were personally involved in the deprivation of Ms. Young's rights.  See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); see also Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 686 (2d Cir. 1998), cert. denied, 525 U.S. 1139 (1999) ("the plaintiff must prove, inter alia, that the defendant caused the deprivation of his or her rights.");  Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) ("personal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under Section 1983").  In the instant case, Plaintiffs have failed to establish the requisite personal involvement of BDC Defendants Uschakow, Arya and Williamson as to all their claims.

A defendant may not be held liable under Section 1983 merely because he holds a position of high authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Williams v. Smith, 781 F.2d at 323-24.  Moreover, there is no liability under § 1983 on a theory of respondeat superior.  See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (the doctrine of respondeat superior does not apply because plaintiff's claim for monetary damages against defendants requires a showing of more than linkage in the chain of

command); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977), <u>cert</u>. <u>denied</u>, 434 U.S. 1087 (1978) ("The fact that these defendants were in a high position of authority is an insufficient basis for the imposition of personal liability"). Therefore, Plaintiffs must establish more than a chain of responsibility which would link Uschakow, Arya and Williamson to any alleged violations of Ms. Young's rights. Here, Plaintiff has not adduced evidence to show that Mr. Uschakow, Mr. Arya or Ms. Williamson who were BDC administrators and not health care providers, were personally involved in monitoring Ms. Young's care and treatment.

Personal involvement of a supervisory official may be established by showing that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring."

<u>Colon v. Coughlin</u>, 58 F.3d at 873; <u>Williams v. Smith</u>, 781 F.2d 319 at 323-24.

Here, there was no proof obtained during extensive discovery that Mr. Uschakow, Mr. Arya and Ms. Williamson participated directly in the treatment and care of Ms. Young, or that they were informed of any alleged constitutional violation, but failed to remedy it. Nor was any proof obtained that these three supervisory defendants exhibited deliberate indifference by failing to act on information that an alleged unconstitutional act was occurring towards Ms. Young. The evidence is to the contrary. <u>See</u> , <u>e.g.</u>, 56.1 Stmt. at ¶¶ 38, 57 Likewise, there is no proof that any of these defendants created a policy or custom under which unconstitutional practices occurred, or were allowed to continue. Instead, the oversight, monitoring, evaluation, and treatment and care decisions that were made for Ms. Young were made by her treating physician, Dr, Milos, were based on his medical opinion after he consulted with the ITT, and

obtained the consent of Ms. Young's mother.  See, e.g., 56.1 Stmt. ¶¶ 28, 61, 69, 70, 73, 103.

Thus, in order to establish any liability whatsoever on the part of either Mr. Uschakow, Mr. Arya

or Ms. Williamson, Plaintiffs will have to show that each was grossly negligent in his or her

supervision.  Colon v. Coughlin, 58 F.3d at 873; Williams v. Smith, 781 F.2d at 323-24.  Plaintiff

cannot produce such proof because Mr. Uschakow, Mr. Arya and Ms. Williamson's actions

conformed with their responsibilities as supervisors, and there were no special circumstances

that might otherwise have given them notice that Ms. Young's constitutional rights were being

violated in any way.

Although Mr. Uschakow, Mr. Arya and Ms. Williamson, as BDC administrators, were

not health care providers personally involved in monitoring Ms. Young's care and treatment,

they were required to see that she received appropriate care and treatment twenty-four hours a

day, seven days a week.  56.1 Stmt. at ¶ 26.  Clearly this requirement was satisfied as evidenced

by Ms. Young's DVP records, consisting of over 10,000 pages of documents.  For example, Dr.

Milos, a Board Certified internist, observed Ms. Young twice a day during the weekdays when

he made his morning and afternoon rounds in the residential unit.  He also saw her in the BDC

clinic for her medical conditions, including injuries related to falls.  If Ms. Young required

medical treatment, she either received it at BDC or was referred for outside treatment.  Ms.

Young's medications were reviewed on a regular basis, including during her quarterly and

annual reviews.  56.1 Stmt. at ¶¶ 71, 72.  Dr. Milos has stated here, and presumably would have

stated to Mr. Uschakow, Arya and Williamson that he had examined Ms. Young and did not

believe, based on his examination, that Ms. Young was suffering from DVT.  56.1 Stmt. at ¶

101.  Defendants Uschakow, Arya and Williamson could have reasonably relied on his opinion,

and it is difficult to imagine how they could reject it.

Peter Uschakow

As the Director of BDC, Peter Uschakow supervised the Deputy Director of Operations,

the Director of Institutional Human Resources, the Safety Department, the Director of Quality Assurance, and the Affirmative Action Officer. 56.1 Stmt. at ¶ 36. Thus, he did not supervise any members of Ms. Young's ITT, which included Dr. Milos, Ms. Ferdinand and Ms. Hayes. Mr. Uschakow was generally responsible for overseeing the daily operations of BDC, and made periodic rounds of all of the program activities attended by consumers, but he was not involved directly in the treatment and care of consumers. 56.1 Stmt. at ¶ 37.

Although Mr. Uschakow does not recall any instance in which he specifically discussed Ms. Young's care and treatment with BDC staff members, he recalls telling the Deputy Director about a telephone call he received from Ms. Young's mother during the Spring of 2005 regarding Ms. Young's worsening gait. Mr. Uschakow expected the Deputy Director to speak to the Treatment Team to follow-up on Mrs. Young's concern. 56.1 Stmt. at ¶ 38. After the telephone call with Ms. Young's mother, Mr. Uschakow saw Ms. Young walking with the assistance of BDC staff members during his periodic rounds. 56.1 Stmt. at ¶ 39. Based on the forgoing, there is no evidence that Mr. Uschakow was grossly negligent or otherwise personally involved in the matter of which plaintiffs complain.

<u>Suresh Arya</u>

As the Deputy Director of BDC, Suresh Arya oversaw the business office, discipline coordinators, residential services, housekeeping, maintenance and the power plant. He had no personal involvement in the treatment and care provided to consumers, including Ms. Young. 56.1 Stmt. at ¶ 41. At the time Mr. Arya left BDC in September 2004, Ms. Young was able to walk around the facility although she was unsteady on her feet. 56.1 Stmt. at ¶ 42. Since leaving BDC in September 2004, Mr. Arya was not made aware of the matters about which Plaintiffs complain related to Ms. Young's reduced walking ability that required her to be placed on fifteen minute checks, the use of a wheelchair for transportation, and the prescription for physical therapy. 56.1 Stmt. at ¶ 43. Therefore, plaintiffs cannot prove that Mr. Arya was

15

personally involved in any of the matters of which they complain and the claims against him should be dismissed.

Jan Williamson

As the Deputy Director of Operations of BDC, Jan Williamson oversees the business office, discipline coordinators, residential services, housekeeping, maintenance and the power plant.  Her responsibilities include overall supervision of residential units at BDC, including the treatment team leaders, as well as the day treatment on campus program.  The day treatment program serves all consumers in residence at BDC.  56.1 Stmt. at ¶ 45.  She is not personally involved in the treatment and care of consumers, including Ms. Young.  56.1 Stmt. at ¶ 23.

At the time that Ms. Williamson assumed her duties as Acting Deputy Director in September 2004, Ms. Young was able to walk around the facility even though she was unsteady on her feet.  56.1 Stmt. at ¶ 46.  During the period of September 2004 through June 2005, Ms. Williamson did not review any documents relating to Ms. Young's care and medical treatment and did not attend any team meeting involving any conference about her.  56.1 Stmt. at ¶¶ 23, 47.

Ms. Williamson had a few telephone conversations with Kathleen Ferdinand about Ms. Young's continued agitation and aggression, dropped foot, unsteadiness on her feet, and the Treatment Team's April 2005 agreement that Ms. Young needed a wheelchair to transport her safely around the facility.  56.1 Stmt. at ¶ 48.  Ms. Williamson's  responsibility was not to medically prescribe the wheelchair, but to obtain a wheelchair for Ms. Young for the stated purpose.  56.1 Stmt. at ¶ 49.  After the wheelchair was issued, Williamson observed Ms. Young walking with assistance of staff anywhere from thirty to forty times.  Most of the time, Ms. Young was assisted by one person, but a second person would be nearby.  Ms. Williamson also observed Ms. Young being transported in a wheelchair, but never saw her in a wheelchair for any other purpose.  56.1 Stmt. at ¶ 51.  Based on the forgoing, there is no evidence that Ms.

16

Williamson was grossly negligent or otherwise personally involved in the matter of which plaintiffs complain.

In sum, Plaintiffs cannot demonstrate that Defendants Uschakow, Arya or Williamson were either grossly negligent in their supervision so as to establish that they were personally involved in the alleged constitutional violation. They cannot be held liable on a theory of respondent superior. See Hemmings v. Gorczyk, 134 F.3d 104, 109, n.4 (2d Cir. 1998). That Ms. Young's death was due to medical complications related to DVT, is insufficient, in and of itself, to show that these supervisory defendants were personally involved in the matters of which Plaintiffs complain. Accordingly, Plaintiffs' § 1983 claims against Mr. Uschakow, Mr. Arya and Ms. Williamson require dismissal as a matter of law.

## POINT III

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ADA AND REHABILITATION ACT CLAIMS

Plaintiffs allege that Defendants violated the American with Disabilities Act and Section 504 of the Rehabilitation Act, because Ms. Young was a qualified individual and was denied the benefit of services, programs or activities of BDC or was otherwise discriminated against and that the exclusion or denial or discrimination was by reason of Ms. Young's disability. See Joint Pretrial Order, at pp. 2-3 under subsection A. Plaintiff's [sic] Contentions.

### A.    ADA and Rehabilitation Act Standards

Although the ADA and the Rehabilitation Act seek to protect different groups of individuals, they are fundamentally intertwined. Many of the provisions of the ADA were based on the Rehabilitation Act, and the ADA specifically calls for the coordination between actions filed under both statutes. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).[1]

---

[1]

**Section 504 of the Rehabilitation Act**

No otherwise qualified person with a disability in the United States, as defined in Section 706(8) of this Title, shall, solely by reason of her of his disability, be

17

The scope of Section 504 is narrower than Title II of the ADA in that it applies only to programs receiving federal financial assistance 29 USC § 794(a). Both Title II of the ADA and Section 504 prohibit discrimination against qualified individuals by requiring that they receive "reasonable accommodations" that permit them to have access to and take a meaningful part in public services and public accommodations. Generally, the standards are the same under Section 504 as under Title II. Henrietta D. v. Bloomberg, 331 F.3d at 272. In order to obtain damages, plaintiffs must show not only a violation of the ADA but either discriminatory animus or ill will. Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001).

excluded from participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.
29 USC § 794(a).

**ADA**

Title I - Employment: Prohibits discrimination against a qualified person with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensations, job training and other terms, conditions and privileges of employment.

Title II - Access to Services: Prohibits all departments, agencies, special purpose districts or other instrumentalities of any state or local government from excluding a person with a disability from participating in, denying a person with a disability the benefits of the services, programs or activities of the entity, or from otherwise discriminating against a person with a disability.

Title III - Prohibits private entities from discriminating on the basis of disability in places of public accommodation and commercial facilities in order to allow ready access; also applies to private entities that offer examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary educational, professional or trade purposes. 42 USC §§ 12181-12189.

Title IV - Regulates common carriers to provide relay systems to the hearing and speech impaired.

Title V - Consists of miscellaneous provisions including retaliation.

Individuals cannot be held liable for monetary damages.  Henrietta D. v. Bloomberg, 331 F.3d at 285.

> **B.    Defendants did not Discriminate Against Ms. Young on the Basis of her Disability, or Otherwise Deny her the Benefit of the Services, Programs or Activities of BDC**

Plaintiffs presumably proceed under Title II of the ADA.  In order to establish a claim under Title II of the ADA, a plaintiff must demonstrate that (1) he is a "qualified individual" with a disability; (2) that the defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of his disabilities.  See Henrietta D. v. Bloomberg, 331 F.3d at 272.  Plaintiffs' claim in this case fails because they cannot prove that Ms. Young was: (1) discriminated against on the basis of her disabilities; and/or (2) denied the benefit of the services, programs, or activities of BDC.  To the contrary, the more than 10,000 pages of care and treatment records concerning Ms. Young establish the high level of care she received at BDC, and participation in BDC's programs and activities.

Plaintiffs have failed to articulate the basis for their claim beyond conclusorily stating that they are also bring this action and seek relief based on this claim.  See Complaint at ¶¶ 1, 18, 22, 36-43.  Likewise, Plaintiffs' Contentions in the JPTO fail to state the basis for this claim beyond stating in a conclusiorly manner that liability against defendants is based on Ms. Young allegedly being denied the benefit of services, programs or activities of BDC or was otherwise discriminated against and that the exclusion or denial or discrimination was by reason of Ms. Young's disability.   See Joint Pretrial Order, at pp. 2-3 under subsection A. Plaintiffs' Contentions.  Moreover, during discovery Plaintiffs failed to establish any discriminatory animus or ill will involved in the care and treatment of Ms. Young because of her disability, or proof that she was denied the benefit of services, programs or activities of BDC that other consumers were provided.

Plaintiffs' claim also fails as a matter of law.  Under similar circumstances, the Second Circuit has found no discrimination under the ADA.  See Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999) (rejecting ADA and Rehabilitation Act claims that the provision of Medicaid-funded services to one group of disabled persons discriminated against other disabled persons who need different services); Doe v. Pfrommer, 148 F.3d at 83-84 (holding that the ADA does not establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals); Flight v. Gloeckler, 68 F.3d 61, 63-64 (2d Cir. 1995) (construing the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) in tandem and stating that challenges to the allocation of resources among the disabled under the Rehabilitation Act are disfavored).  See also Green v. City of New York, 2007 U.S. Dist. LEXIS 65842 at * 23 (S.D.N.Y. Sept. 6, 2007) (rejecting plaintiff's ADA claim because he failed to show he was treated differently than persons without disabilities).

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' ADA and Rehabilitation Act claims.

## POINT IV

### DEFENDANTS ARE EITHER ABSOLUTELY IMMUNE FROM SUIT OR ENTITLED TO QUALIFIED IMMUNITY FROM SUIT FOR DAMAGES

### A.    The OMRDD and BDC Defendants in Their Official Capacities are Entitled to Eleventh Amendment Immunity for Claims Arising Under 42 U.S.C. § 1983

Plaintiff cannot obtain the relief sought in this complaint through § 1983 against OMRDD because OMRDD, as a New York State agency, is entitled to Eleventh Amendment immunity. N.Y. Mental Hyg. Law § 13.01 (identifying OMRDD as a State agency); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-101, 104 S.Ct. 900, 924-25 (1984); Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-45, 113 S. Ct. 684, 687-88 (1993); Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2310 (1989).  New York State has not consented, by any operation of any state constitutional or state

law provision, to be sued in federal court. <u>Trotman v. Palisades Interstate Park Commission</u>, 557 F.2d 35, 38-40 (2d Cir. 1977). In addition, it is well-settled that § 1983 does not override the Eleventh Amendment immunity afforded states, state agencies, and state officials acting in their official capacities. <u>See</u>, <u>e.g.</u>, <u>Will</u>, 491 U.S. at 71, 109 S. Ct. at 2312. Consequently, the OMRDD Defendants and the present and former BDC Defendants sued in their official capacities are all entitled to immunity under the Eleventh Amendment from Plaintiff's § 1983 claims. In addition, they are not "persons" within the meaning of § 1983, and thus are not subject to liability for deprivation of constitutional rights thereunder. <u>See</u> <u>Will</u>, 491 U.S. at 71, 109 S. Ct. at 2312; <u>Dube v. State University of New York</u>, 900 F.2d 587, 595 (2d Cir. 1990). To the extent that the Complaint alleges § 1983 claims against the BDC Defendants in their official capacity, those claims must be dismissed because they are absolutely immune under the Eleventh Amendment.

**B.    BDC Defendants Sued in Their Individual Capacity are Entitled to Qualified Immunity For Section 1983 Claims for Damages**

Public officials are protected by qualified immunity "so long as their 'conduct does not violate a clearly established statutory or constitutional right.'" <u>Kerman v. City of New York</u>, 261 F.3d 229, 236 (2d Cir. 2001) (<u>quoting</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). <u>See</u> <u>Benjamin v. Schwartz</u>, 299 F. Supp. 2d 196, 201 (S.D.N.Y. Jan. 8, 2004). In the absence of Supreme Court or Second Circuit precedent, a constitutional right is not "clearly established." <u>Francis v. Coughlin</u>, 891 F.2d 43, 46 (2d Cir. 1989) ("To defeat an official's claim of qualified immunity, the individual's rights must have been clearly established."); <u>Jermosen v. Smith</u>, 945 F.2d 547, 550 (2d Cir. 1991) ("the decisional law of the Supreme Court [or] the applicable circuit court [must] support the existence of the right in question"), <u>cert</u>. <u>den'd</u>, 503 U.S. 962 (1992).

Whether an official may invoke qualified immunity "generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were 'clearly

established'" when the action was taken.  Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3039  (1987) (citing, Harlow, 457 U.S. at 818-19, 102 S. Ct. at 2738-39).  Examination of the official's subjective belief is unnecessary; the pertinent inquiry is how a reasonable official in the defendant's position would respond. Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir.1992); Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).   Additionally, the use of an "objective reasonableness" standard permits qualified immunity claims to be decided as a matter of law "as a means quickly to extricate government officials from defending insubstantial suits." Cartier,   955 F.2d at 844.   The defendants are entitled to dismissal on qualified immunity grounds if they demonstrate that they reasonably believed that their actions did not contravene an established constitutional right.  Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).

The  Second  Circuit  has  described  three  ways  in  which  a  defendant  may  establish  a defense of qualified immunity.  Robinson v. Via, 821 F.2d 913, 920-21 (2d Cir. 1987).  First, the defense should be sustained if "it was not clear at the time of the official acts that the interest asserted . . . was protected by a federal statute or the Constitution." Id.; see Loria v. Gorman, 306 F.3d 1271, 1286 (2d Cir. 2002).   Second, the defense applies if it was clear that the interest asserted was protected, but "it was not clear at the time of the acts at issue that an exception did not permit those acts."   Robinson, supra.   The law must be "clearly established in a more particularized sense," Kerman, 261 F.3d at 236, in the "specific context of the case." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001).  Ms. Young had a clearly established right not to be subjected to actions that were arbitrary, conscience-shocking, or oppressive in a constitutional sense or otherwise subjected to deliberate indifference to her serious medical and mental health care needs.   However, the existing record is completely devoid of any facts demonstrating that defendants violated the clearly established constitutional right of plaintiff to be free from actions that were arbitrary, conscience-shocking, or oppressive in a constitutional sense or from deliberate indifference.  At a minimum, Ms. Young received proper treatment and

care for her particular medical and mental health conditions.

Finally, "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." Robinson, supra.  "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Saucier, 533 U.S. at 202, quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Plaintiffs allege that Ms. Young right to appropriate medical care was violated because defendants failed to take prophylactic measures meeting minimum professional standards.  See Joint Pretrial Order, at p. 2 under subsection A. Plaintiffs' Contentions.  In particular, plaintiffs allege that during the last few months of her life Ms. Young was largely confined to a wheelchair or was otherwise maintained without mobility as a result of sedative medication and untreated and/or inadequately treated insomnia, untreated and/or inadequately treated back pain and untreated and/or inadequately treated drop foot.  Id.  However, during the first few months of 2005, Ms. Young started to fall frequently and the ITT became concerned that she was going to fall and hit her head.  56.1 Stmt. at ¶ 79.  In response to these falls, the ITT had a Special Case Conference in which Dr. Milos stated that stated that he  believed that the most recent falls were contributed to by medications that are sedating, and the left foot drop which was more pronounced.   He also stated that when Ms. Young did not sleep during the night, her unsteadiness was more pronounced the following day.   56.1 Stmt. at ¶ 82.   Dr. Milos recommended a reduction in Ms. Young's Zyprexa medication dose, the issuance of a protective helmet for her head in case of another fall, and that she be evaluated for physical therapy.  56.1 Stmt. at ¶¶ 84, 85, 87.  In addition, Dr. Milos recommended that a wheelchair be issued to Ms. Young for transportation purposes only.  56.1 Stmt. at ¶ 85. Ms. Young was not confined to a wheelchair and she was observed walking with the assistance of BDC staff by plaintiffs, 56.1

Stmt. at ¶ 95, and defendants. 56.1 Stmt. ¶¶ 39, 42, 51, 59, 60, 65, 66, 67, 72, 102. It was objectively reasonable for the defendants to believe that they were not violating Ms. Young's right to appropriate medical care and treatment. Therefore, they are entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156. As the Supreme Court explained in Saucier, the objective reasonableness of the defendant's belief that his actions had not violated the plaintiff's constitutional rights was shown by the fact the plaintiff had failed to identify any case demonstrating a clearly established rule prohibiting the officer from acting as he did. Saucier, 533 U.S. at 209.

The facts set forth in this motion demonstrate that Dr. Milos', as well as Ms. Ferdinand and Hayes, treatment and care decisions for Ms. Young were objectively reasonable in light of Ms. Young's medical conditions and the defendants' judgment and review of her medical and mental health care needs. Indeed, the Second Circuit has stated that "a doctor will not be liable under § 1983 for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment.'" Fisk v. Letterman, 2007 U.S. Dist. LEXIS 23131 (S.D.N.Y., Mar. 15, 2007) (citing Kulak v. City of New York, 88 F.3d 63, 75 (2d Cir. 1996) quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982)). The oversight, monitoring, evaluation, and treatment of Ms. Young by defendants was thorough and according to the accepted standard of care. 56.1 Stmt. at ¶¶ 103, 104. Ms. Young's medical care providers could not have reasonably anticipated that she would develop DVT and a fatal pulmonary embolism because she: (1) had none of the currently accepted risk factors or symptoms that are recognized to increase the likelihood of a diagnosis of DVT, 56.1 Stmt. at ¶¶ 101, 104; (2) also continued to receive physical therapy, 56.1 Stmt. at ¶¶ 89, 102; (3) continued to walk with assistance of BDC staff, 56.1 Stmt. at ¶¶ 39, 42, 51, 59, 60, 65, 66, 67, 72, 95, 102; and (4) appeared to remain completely asymptomatic for the three weeks preceding her death. 56.1 Stmt. at ¶ 102.

24

Accordingly, BDC Defendants conduct with respect to Ms. Young was objectively reasonable and they are entitled to qualified immunity, and Plaintiffs' claims for damages should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment in its entirety and enter judgment dismissing this action and granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
      August 1, 2008

                    ANDREW M. CUOMO
                    Attorney General of the
                     State of New York
                    Attorney for Defendants
                    By:

                    S/_____
                    JOSE L. VELEZ
                    Assistant Attorney General
                    120 Broadway, 24th Floor
                    New York, New York 10271
                    (212) 416-8164