UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

Estate of VALERIE YOUNG by VIOLA YOUNG, :
as Administratrix of the Estate of
Valerie Young, and in her personal      :  **DECLARATION OF**
capacity, SIDNEY YOUNG, and LORETTA        **JAN WILLIAMSON**
YOUNG LEE,                              :

                Plaintiffs,      :  07-CV-6241
                                    (LAK)(DCF)
                                        :   ECF Case
    -against-
                                        :

STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL           :
DISABILITIES, PETER USCHAKOW,
personally and in his official capacity,:
JAN WILLIAMSON, personally and in her
official capacity, SURESH ARYA,         :
personally and in his official capacity,
KATHLEEN FERDINAND, personally and in   :
her official capacity, GLORIA HAYES,
personally and in her official capacity,:
DR. MILOS, personally and in his
official capacity,                      :

                Defendants.      :
------------------------------------------X

      JAN WILLIAMSON, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

      1.   I am presently employed by the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") at the Brooklyn Developmental Disabilities Services Office ("BDDS" or "BDC") as Deputy Director of Operations, a position I have held since September 2004, initially in the capacity of Acting Director before being permanently appointed late 2005 or early 2006 as permanent deputy director.  From 2001 to September 2004,

I was a Treatment Team Leader at BDC's Day Treatment program. Prior to that, from 1992 to 2001, I was a Social Worker II at another OMRDD developmental center. I report directly to the Director of BDC, presently the Acting Director, Donna Limiti, who replaced former Director Peter A. Uschakow when he retired January of 2008. I am a Defendant in this action.

2. I am familiar with the matters set forth herein based on my personal knowledge and on information and belief, the bases for which are my communications with employees at OMRDD and the New York State Office of the Attorney General ("OAG"), my review of documents maintained by BDC, as well as Plaintiffs' Complaint. I submit this Declaration in support of Defendants' Motion for Summary Judgment in this action to dismiss Plaintiffs Viola Young, Loretta Lee Young and Sidney Young's Complaint.

3. As the Deputy Director of Operations of BDC, I oversee the business office, discipline coordinators, residential services, housekeeping, maintenance and the power plant. My responsibilities include overall supervision of residential units at BDC as well as the day-treatment on campus program. The day treatment program serves all consumers in residence at BDC. Supervising the residential units also includes making sure that both of these operational areas are in compliance with the conditions of participation in the Medicaid program.

4. My oversight of residential services involves the team

leaders who are directly responsible for each of five residential units. Each residential building at BDC has an interdisciplinary treatment team ("ITT"), which would include a psychiatrist and psychologist, medical providers consisting of physicians and nurses, social worker, and other staff who provide services to consumers such as, physical therapy and occupational therapy. The consumer's guardian and/or family members are also consulted by the ITT to authorize treatment and care decisions. Each ITT has a Treatment Team Leader whose job it is to make sure that consumers are receiving their services, and that they are safe and protected.

5. Treatment Team Leaders have both administrative and program responsibilities in connection with accomplishing the goals of the ITT. This position includes the oversight, evaluation and discipline of direct care staff. The team leaders report to me on an as needed basis and during biweekly meetings. I discuss with the team leaders issues related to general operations and do not discuss patient issues unless there is some unusual situation such as behavior problems. Ms. Young lived in Building 3-1 along with approximately 50 other consumers. Her Treatment Team Leader was Kathleen Ferdinand who supervises a staff of approximately 80.

6. My oversight of discipline coordinators involves the specialists in the particular clinical fields including medicine,

psychiatry and psychology, nursing, physical therapy and occupational therapy. I have monthly meetings with them related to the general operation of their departments or more frequently if there is a special concern. However, I have no personal involvement in the treatment and care provided to consumers, including Ms. Young. If a physician and/or the treatment team believe there is a specific need for a consumer, they will address that need with the use of properly trained staff. BDC provides care for its consumers twenty-four hours a day, seven days a week.

    7.    As the Deputy Director, my responsibilities also include staffing for the entire facility, compliance with all regulatory entities, seeing to it that the individuals who reside in the facility are afforded the appropriate treatment and care by staff members, seeing to it that any allegations or incidents are thoroughly investigated, coordinating with voluntary agencies, and working on transitioning consumers from BDC into group homes. I am also the member of several committees including the risk management committee for which I am the chairperson, the forensics committee, budget development, budget compliance, and internal control compliance.

    8.    At the time that I assumed my duties as Acting Deputy Director, although she was unsteady on her feet, Ms. Young was able to walk around the facility. During April 2005, I was made

aware of Ms. Young's reduced walking ability that required her use of a wheelchair for transportation, because I was responsible for making sure that a wheelchair would be made available for her use. However, I was not personally involved in the decision to place Ms. Young in a wheelchair, because matters related to the medical treatment of consumers are determined by physicians. I was also not involved in the November 2004 decision by the treatment team to place Ms. Young on fifteen minute checks to monitor her activities in order to prevent injuries. Although these fifteen minute checks required entries in Special Observation Logs, I was not involved in supervising the direct service staff responsible for making the entries in the logs. I also did not destroy any of these logs or direct anyone to do so. I was further not involved in the May 2005 decision to place Ms. Young in physical therapy for her unsteady feet.

9. I did not review any documents relating to Ms. Young's treatment and care prior to her death, nor did I attend any team meeting involving any conference about her. However, during the period of September 2004 through June 2005, I did have a few telephone conversations regarding Ms. Young with her Treatment Team Leader, Kathleen Ferdinand, about Ms. Young's dropped foot, her continued agitation and aggression, her unsteadiness on her feet, and the team's agreement that she needed a wheelchair to transport her safely around the facility. There was concern by

the treatment team that Ms. Young was at risk of falling due to the unsteadiness caused by her dropped foot. The treatment team was also concerned because she attempted to strike out both with her hands and legs at other consumers and staff. The team had great concern about Ms. Young walking any distance so they recommended that she use a wheelchair for transport to go from her residential unit to where her day treatment program was located in a separate building. My responsibility was to fulfill the justification requirements for the order request to obtain a wheelchair for Ms. Young for the stated purpose. It was not a decision by me to medically prescribe the wheelchair. I was not aware of any risk for deep vein thrombosis for any consumers, including Ms. Young prior to her death.

10. I observed Ms. Young anywhere from two to twenty times a week while making my rounds around the facility. During these observations, it did not appear to me that Ms. Young was heavily sedated. I observed Ms. Young being transported in a wheelchair, but never saw her in a wheelchair for any other purpose. After she was issued the wheelchair, I also observed Ms. Young walking with assistance by staff anywhere from thirty to forty times. Most of the time, she was assisted by one person, but a second person would be nearby.

11. Accordingly, I respectfully request that this Court grant summary judgment, dismissing the Complaint in its entirety.

Dated: Brooklyn, New York
       July 17, 2008

_____
JAN WILLIAMSON