UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

Estate of VALERIE YOUNG by VIOLA YOUNG,
as Administratrix of the Estate of
Valerie Young, and in her personal       :   **DECLARATION OF**
capacity, SIDNEY YOUNG, and LORETTA          **GLORIA HAYES**
YOUNG LEE,                               :

               Plaintiffs,     :   07-CV-6241
                                             (LAK)(DCF)
                                         :   ECF Case
    -against-
                                         :

STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL            :
DISABILITIES, PETER USCHAKOW,
personally and in his official capacity,:
JAN WILLIAMSON, personally and in her
official capacity, SURESH ARYA,          :
personally and in his official capacity,
KATHLEEN FERDINAND, personally and in    :
her official capacity, GLORIA HAYES,
personally and in her official capacity,:
DR. MILOS, personally and in his
official capacity,                       :

               Defendants.     :

------------------------------------------X

    GLORIA HAYES, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

    1.   I am employed by the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") at the Brooklyn Developmental Disabilities Service Office ("BDDS" or "BDC") since 2003 where I have been a Residential Unit Supervisor. I was previously employed at the BDC as a Wing Leader from 1984 to 1997, and a Developmental Aide from 1980 to 1984. From 1997 to 2003 I was a house manager for a group home

for high functioning consumers. I am a Defendant in this action.

2. I am familiar with the matters set forth herein based on my personal knowledge and on information and belief, the bases for which are my communications with employees at OMRDD and the New York state Office of the Attorney General ("OAG"), my review of documents maintained by BDC, as well as Plaintiffs' Complaint. I submit this Declaration in support of Defendants' Motion for Summary Judgment in this action to dismiss Plaintiffs Viola Young, Loretta Lee Young and Sidney Young's Complaint.

3. As the Residential Unit Supervisor, I directly supervise eleven facility Wing Leaders, and indirectly supervise all direct care workers and developmental aides who provide the actual care to the consumers, including helping them develop their skills to the best of their ability. There are presently approximately fifty consumers in the unit that I supervise. My responsibilities as the supervisor of these staff include assigning and scheduling staff members to perform direct care, supervision and training of consumers, distributing policy and procedure memos or information obtained during a meeting, and providing in-house training to these staff on matters related to their care of the consumers. My immediate supervisor is the Treatment Team Leader, Kathleen Ferdinand. I am also a member of the Treatment Team.

4. My responsibilities as the Residential Unit Supervisor also include giving staff instructions regarding the care of consumers, including Valerie Young. Prior to her death, I recall telling the staff to make sure that Ms. Young was ambulated with one or two of the staff walking with her. I also recall telling staff that at times they would have to elevate Ms. Young's legs. The purpose of these directions were to assist Ms. Young because she was not steady on her feet and her legs would sometimes swell. At no time prior to her death on June 19, 2005, was I aware that Ms. Young or any consumer at BDC had been diagnosed with deep vein thrombosis ("DVT"), nor was I made aware that Ms. Young was in danger of suffering from DVT due lack of mobility.

5. During the first few months of 2005, Ms. Young fell frequently. She did not appear to be heavily sedated during this time. Starting around April 2005, although she was fully ambulatory, Ms. Young needed to be transported by wheelchair from one area to the other around the facility in order to attend programs, physical therapy and occupational therapy. There were times when she was not being ambulated that she would get into the wheelchair herself to sit there rather than in a regular chair. Ms. Young would be periodically walked around because she was able to walk with the assistance of just one staff member. Many times she would jump up or get up by herself and walk around on her own, even though she was unsteady on her feet.

6. I attended meetings with the treatment team regarding Ms. Young's falls related to her difficulty walking. I would then meet with the Wing Supervisors who would, in turn, meet with the direct care staff. During these meeting it was emphasized that the wheelchair was to be used only for transporting Ms. Young and that she needed to be ambulated. I would consistently remind the supervisors of this and they would then remind the direct care staff. There was also in-service training to the direct care staff about one to two staff assisting Ms. Young with her ambulation with two staff assisting her to and from the bathroom.

7. I never saw Ms. Young confined to a wheelchair. When I made rounds on the wing, I observed Ms. Young being ambulated with the assistance of staff. I was also told by staff that they followed the same routine that I had observed when I was not there, that is, that they periodically walked her around, or that she would sometimes get up herself and she would walk around. I also observed staff elevating Ms. Young's leg when she was on the Wing and the program area and was told that this was also being done at other times.

8. Ms. Young's mother, Viola Young, had called for special meetings on prior occasions because she was concerned with Ms. Young's aggressive behavior. The mother complained that Ms.

4

Young was unmanageable, uncontrollable. She wanted to increase the psychotropic medications that Ms. Young was receiving, but the medical staff did not feel it was appropriate.

9. As the Residential Unit Supervisor, I was not involved in the medical treatment decisions plaintiffs complain of in their Complaint. Matters related to the medical treatment of consumers were left for the physician to determine the appropriate course of action, because all decisions related to medical treatment and care of the consumer are considered part of the medical professional practice. I observed Ms. Young's treating physician, Dr. Jovan Milos, visit the Wing in which Ms. Young resided. The Wing also had a nurse that was stationed in the building. To the best of my knowledge, if Ms. Young required medical treatment, she received it.

10. Ms. Young had also been placed on fifteen minute checks which required someone to watch her to prevent her from having an accident. These checks were supposed to be entered in Special Observation Logs by the direct care staff who were under the direct supervision of the Wing Leader. I did not destroy any of these logs or direct anyone to do so.

11. Accordingly, I respectfully request that this Court grant defendant summary judgment, dismissing the Complaint in its entirety.

Dated:  Brooklyn, New York
        July 18, 2008

_____
GLORIA HAYES

6

TOTAL P.07