IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF VALERIE YOUNG, et al., | ECF Case |
| plaintiffs, | Case No.: 07-CV-06241-LAK-DCF |
| - against - | DECLARATION OF JACQUES CATAFAGO, ESQ. IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT |
| STATE OF NEW YORK OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, et al., | |
| defendants. | |

JACQUES CATAFAGO, an attorney admitted to practice before the Courts of the State of New York and this Court, certifies pursuant to 28 USC §1746 and under penalty of perjury, that the following is true and correct:

1. I am co-counsel for plaintiffs together with Jonathan Bauer, Esq. and make this Declaration of my personal knowledge and based upon my review of the records and documents of this case. I submit this Declaration in Opposition to the Motion for Summary Judgment.

2. Defendants and their attorneys have acknowledged clinical records of the decedent, Valerie Young ("Valerie"), known as "Special Observation Logs" were not produced, cannot be accounted for and are no longer extant. Defendants and their attorneys have also acknowledged that plaintiffs are entitled to attorney fees for their attorneys' time and efforts preparing the motion filed in connection with the documents that were not produced[1]. Declaration of Jose L. Velez, Esq. dated May 30, 2008 at ¶9, filed with this Court as document 26.

---

[1] As of the date this declaration was sworn to, the motion for sanctions relating to spoliation of documents is currently *sub judice* before the Honorable Debra Freeman, USMJ, pursuant to an order of reference.

3.  The sequence of events during the course of discovery is consistent with a pattern of willful non-production of these documents.

**A.  Defendants' failure to identify, non-production and spoliation of the Special Observation Logs of Valerie Young has been established beyond any dispute**

4.  It has been established beyond <u>any</u> dispute, <u>and the defendants admit</u>, that from November 4, 2004 through June 19, 2005 (the date of Valerie's death), Valerie was under Special Observation. *E.g.*, **Exhibit 6** at page 2 (Bates 7784) Special Case Conference of November 5, 2004 (initiating fifteen minute checks for Valerie); the Annual IPP of April 13, 2005 (**Exhibit 33** at Bates 7630) (same); <u>see also</u> Moving Papers: Kathleen Ferdinand Decl. at ¶25; Jovan Milos Decl. at ¶17; Gloria Hayes Decl. at ¶10; Jan Williamson Decl. at ¶8.

5.  It has been established beyond <u>any</u> dispute, <u>and the defendants do not deny</u>, that the Special Observation Log Books provided a record of Valerie's activities, every fifteen minutes, twenty-four hours each day, seven days of the week, from November 4, 2004 until her death on June 19, 2005. *E.g.*, **Exhibit 40** (two Special Observation log book pages extant, recorded the date that Valerie died, June 19, 2005 timed from 3:00 pm through 9:30 pm); **Exhibit 43** at Bates 1452 (BDC Policy and Procedure Manual, requiring that assigned staff document "consumer's activities every 15 minutes in 1:1 log."); **Exhibit 45**, Bates 0013 Memorandum, defendant Ferdinand to all staff of November 5, 2004 and reissued December 22, 2004 placing Valerie under special observation and requiring that staff "<u>record what Ms. Young is doing every 15 minutes</u> in the log book which has been provided" (emphasis added); <u>see also</u> Moving Papers, Kathleen Ferdinand Decl. at ¶25.

6.  It has been established beyond any dispute, <u>and the defendants admit</u>, that the Special Observation log books are no longer extant. Moving Papers on the instant motion: Kathleen Ferdinand Decl. at ¶27; Jovan Milos Decl. at ¶17; <u>see also</u> Defendants' opposition to plaintiffs'

motion for sanctions: Kathleen Ferdinand Decl. at ¶16 (filed as Document 27) (indicating that the logs cannot be located); Donna Limiti Decl. at ¶¶ 4 and 6-10, (filed as Document 28) (stating that at the request of the Office of the Attorney General she caused a search to be made for the special observation logs but did not locate them); Jose L. Velez, Esq. Decl. at ¶9, (filed as Document 26) (stating that the special observation logs cannot be accounted for by defendants and acknowledging that plaintiffs are entitled to attorney fees in connection with that motion).

7.  As set forth in the following sections, during the course of discovery, production of documents, interrogatory answers and representations made on the record during depositions and in a sworn statement to this Court were calculated to obscure that Special Observation Logs had been made during the last months of Valerie's life, consistent with willful non-production.

**B.  Defendants' Initial Production, Interrogatory Answers and the Response to Plaintiffs' Production Request were consistent with a willful non-production**

8.  Defendants Initial Production (**Exhibit 15**) and Interrogatory Answers (**Exhibit 16**) did not identify the Special Observation Logs and they were not produced in defendants first response to plaintiffs' production requests (**Exhibit 17**).

**(i)  Defendants' Initial Production omitted any reference to the special observation logs**

9.  Defendants served their Rule 26(a)(1) Initial Disclosure on or about October 9, 2007. **Exhibit 15**.

10.  Their Initial Disclosure identifies the following categories of documents:

> Decedent Valerie Young's clinical records, investigation materials, mortality review, autopsy report, interoffice memorandums, conference meeting summaries, incident or investigation reports, reportable incident reports, and allegation of abuse reports.
>
> **Exhibit 15**, Initial Disclosure at ¶2 (pages 2-3).

11. Log books in general and Special Observation log books in particular were not identified as a category of documents.

12. Defendants never supplemented their Initial Disclosure.

**(ii)  Defendants November 2007 Production Response and Interrogatory Answers did not identify the special observation logs**

13. On November 8, 2007 defendants requested that an authorization for the release and disclosure of health information be executed and provided to them. **Exhibit 3**, Office of the Attorney General form for authorization to release health information.

14. On November 30, 2007, defendants served their Interrogatory Answers (**Exhibit 16**) and first Production Response (**Exhibit 17**). Shortly thereafter plaintiffs' counsel received documents sequentially Bates numbered 1 through 8797, having provided a duly executed copy of the Attorney General authorization form (**Exhibit 3**).

15. The Interrogatory Answers did not identify any of the documents, but instead made reference to the materials produced. **Exhibit 16**, Interrogatory Answer #2 (page 2), other than document Bates 0001-0356, which were described as relating to the identity of all persons who have acted on defendants' behalf who investigated the matters set forth in the complaint (Interrogatory Answer #6).

16. The Production Responses did not identify any of the documents, but instead made reference to the materials produced. **Exhibit 17**, Production Response #1 (page 2) and incorporated through this response.

17. The Interrogatory Answers were certified by defendant Jan Williamson (**Exhibit 16** at page 7).

> **(iii) Defendants' supplemental production during February and March 2008 comprised documents described as log books, but failed to identify (and omitted) the Special Observation Logs**

18. On February 26, 2008, defendants produced what were identified as "Brooklyn Developmental Center log book entries for Valerie Young for the period of early 2003 through early 2005." **Exhibit 18**, letter production response under the signature of Jose L. Velez, Esq.

19. Served with the February 26 production response were about one thousand heavily redacted pages of log book entries. Although no privilege log was served with the documents, it is our understanding that the redacted material concerned persons not parties to this lawsuit.

20. The February 26 production also stated that defendants were "in the process of copying additional logbook entries that will be produced once they are complete" (**Exhibit 18**).

21. Shortly thereafter, plaintiffs' counsel received approximately five hundred pages of additional logbook entries, also heavily redacted which included **Exhibit 38** (Core Office Log Book from the last three months of Valerie's life) and **Exhibit 42** (Wing Log Book from the last three months of Valerie's life).

**C.   Repeated assurances by defendants' counsel that production was complete**

22. Document production was made by defendants without any index or other identification of the documents produced or their sources <u>with the sole exception</u> of the February supplemental production. The documents produced in that Supplemental Production were explicitly identified as the "<u>log book entries for Valerie Young</u>" (**Exhibit 18**, emphasis added).

23. At every stage of discovery proceedings, defendants, by counsel, provided repeated assurances that document production was complete, as set forth in this section.

**(i)  Defendants represented to this Court that production was complete, even though the special observation logs were neither identified nor produced**

24.   Because the documents were produced to some extent without a consistent organization and without any identification (other than the February Supplemental Production of Log Books as noted above), plaintiffs sought to enforce their second production requests which sought specific identification of documents from each defendant. <u>See</u>, Motion to Compel, Docket documents Numbers 14-16.

25.   The Assistant Attorney General represented <u>to this Court</u> in a sworn statement submitted in opposition to the motion to compel, that "defendants have produced exactly 10,464 pages of documents … <u>which are all of the documents identified by defendants</u> as being in their possession that are responsive to the discovery requirements under the Fed. R. Civ. P. and plaintiffs' discovery requests." Declaration of Jose L. Velez, dated March 17, 2008 at ¶5 (emphasis added), previously filed with this Court and docketed as Document 17.

26.   Information concerning Defendants' non-disclosure and spoliation of the Special Observation Logs was omitted from the March 2008 Declaration filed with this Court.

**(ii)  Defendants represented on the record during depositions that all documents were produced, even though the special observation logs were neither identified nor produced**

27.   Depositions of the defendants were conducted by the undersigned between March 27 and April 18, 2008.

28.   In addition to Assistant Attorney General Velez, Attorney Patricia Pawlowski appeared on behalf of defendant OMRDD and was present throughout every one of the defendants' depositions. Ms. Pawlowski is a General Counsel of OMRDD. <u>See</u> appearance of OMRDD by Patricia Pawlowski, Esq., in defendants' depositions, **Exhibit 19** through **Exhibit 25**.

29. On **March 27, 2008**, during the deposition of defendant Jovan Milos, Assistant Attorney General Velez stated: "I will say again that <u>we have produced all documents related to this case</u>." **Exhibit 22**, Jovan Milos Deposition at page 157 (emphasis added).

30. On **April 7, 2008**, during the deposition of defendant Kathleen Ferdinand, Assistant Attorney General Velez stated: "<u>We produced the full medical records</u>." **Exhibit 20**, Kathleen Ferdinand Deposition at page 189 (emphasis added).

31. On **April 8, 2008**, during the deposition of defendant Suresh Arya, Assistant Attorney General Velez made the following forceful representation that all documents have been produced:

> Mr. Catafago: I'm going to call for the production of that. According to my notes, those certifications were not produced.
>
> AAG Velez: Counsel, the full medical file was produced. <u>Maybe you just need to make a second look, because it's 10,000 pages</u>.
>
> **Exhibit 19**, Suresh Arya Deposition at page 75 (emphasis added)
>
> Mr. Catafago: So we ask for all records relating to [Valerie's] treatment.
>
> AAG Velez: And <u>all records were produced</u>.
>
> **Exhibit 19**, Suresh Arya Deposition at page 80 (emphasis added)

32. On **April 18, 2008**, during the deposition of defendant Gloria Hayes, in an extended colloquy between counsel, Assistant Attorney General Velez again assured plaintiffs' counsel that all documents relating to Valerie's care and treatment had been produced. **Exhibit 21**, Gloria Hayes Deposition at pages 163-167.

33. In response to queries from counsel during that deposition, the Assistant Attorney General stated on the record:

> AAG Velez: If she [the witness] writes a memo, that goes into Valerie Young's records, <u>and all that has been produced</u>, counsel.
>
> \* \* \*
>
> AAG Velez: They [the documents] have been provided to you already. <u>You have everything</u> that was in the file.
>
> **Exhibit 21**, Gloria Hayes Deposition at page 165 (emphasis added).

34. OMRDD Attorney Pawlowski was present and appeared on every occasion that AAG Velez represented that all documents had been produced and did not, on <u>or off</u> the record, correct his statements.

35. Attorney Pawlowski did, however, identify documents as Valerie's records having been produced during one deposition. **Exhibit 22**, Jovan Milos Deposition at page 126. She did not at that time advise plaintiffs that the Special Observation Logs had at one time existed but had been spoliated. *Id*.

**D. A detailed review of defendants' production established that Valerie had been placed under Special Observation for over seven months prior to her death, and that the logs of those observations were not identified and were not produced**

36. After depositions were completed co-counsel Jonathan Bauer and I followed the suggestion on the record made by AAG Velez to "make second look, because it is 10,000 pages" (moving papers **Exhibit 15**, Arya Deposition at page 80).

37. We decided to "make a second look" because it became apparent to us that notwithstanding the representations that "all records" were produced (see ¶¶5-6 above), documents were (and are still) missing.

38. Accordingly, the undersigned attorney with co-counsel, Jonathan Bauer, made a painstaking and detailed examination and analysis of all documents produced by defendants (10, 464

pages) and of 271 pages of documents obtained by subpoena from the New York State Commission on the Quality of Care ("Commission") comprising their investigative file of Valerie's death.

39. The State Commission in its final determination letter of October 24, 2005 commented on the lack of information provided by defendants describing Valerie's level of activity (**Exhibit 34** at Bates 0095), discussing two pages of special observation logs (as produced with fax cover page submitted herewith, **Exhibit 40** at Bates 0129-0130).

40. The fax cover page over the two page of special observation logs (**Exhibit 40** at Bates 0128) is dated **July 28, 2005**, over one month after Valerie died.

41. In response to a subpoena, documents were produced by the Commission and included the one of the pages from the special observation logs bearing a fax header from the Brooklyn Developmental Center dated **July 28, 2005** confirming the date on the fax cover sheet as the actual date transmitted. See **Exhibit 41**, Bates CQC76.

42. These documents confirm that the special observation logs were extant as late as July 28, fully one month after Valerie died and after the date that the defendants were without doubt on notice of both the State investigation and the complaint by Mrs. Young triggering the common law obligation to preserve documents, in addition to the regulatory requirements discussed in the Memorandum of Law submitted herewith. We note that logbooks are physically bound volumes. See Kathleen Ferdinand Declaration at ¶24; see also Exhibit 38 (Core Log) at Bates 9917 (front cover) and Bates 9976 (inside back cover).

43. Numerous documents, discussed in detail in the Memorandum of Law submitted herewith support the contention that the spoliated log book are both germane to plaintiffs' case in chief and support plaintiffs' contentions. *E.g.*, **Exhibit 40** (two pages of extant Special Observation Logs recording that Valerie was sitting for several consecutive hours); **Exhibit 42** at Bates

10020 (Wing Log entry stating Valerie "to be in wheelchair at all times"); **Exhibit 38** at Bates 9947 (Core Log entry stating "V. Young is to remain in wheelchair at all times as per Dr"); **Exhibit 51**, Occupational Therapy Note, April 27, 2005 (re-evaluation of wheelchair sitting posture), among other documents analyzed in the Memorandum of Law filed herewith.

E. **Defendants' opposition to the motion seeking sanctions for spoliation of documents and expansion of that opposition made via this motion for summary judgment are insufficient**

44. Having determined that substantial records, constituting descriptions of Valerie's activities every fifteen minutes, 24 hours a day for over seven month, were missing from production, notwithstanding defendants' representation of the completeness of production, plaintiffs filed their motion seeking sanctions[2] for the spoliation of documents on **May 14, 2008**.

45. During a telephone conversation on or about **May 22, 2008**, and only <u>after the spoliation motion had been filed</u>, AAG Velez acknowledged that he had noticed that the close supervision logs at issue were missing. Prior to that conversation AAG Velez maintained that all documents relating to Valerie Young's treatment at the Brooklyn Developmental Center had been produced, and in the defendants' supplemental production response of February 26 represented that all logbook entries were produced or about to be produced.

46. Defendants in their **May 30, 2008** opposition to plaintiffs' motion for sanctions conceded that plaintiffs' attorneys are entitled to fees on the motion (Declaration of Jose L. Velez, Esq. at ¶9, filed as Document 26) and admitted that the subject documents existed at one time but cannot be produced. *E.g.*, Ferdinand Declaration of May 30, 2008 filed as Document 27.

---

[2] In summary, Plaintiffs seek a declaration that the subject documents were subjected to spoliation, an adverse inference, a limitation on defendants' testimony, permission to bring the spoliation of documents to the attention of the jury and attorney fees. <u>See</u>, Notice of Motion, filed as Document 20.

47. In their opposition, defendants also filed a declaration from one Donna Limiti, who is not personally a party to this action, confirming that the Special Observation Logs no longer exist (Limiti Decl. at ¶¶ 6-10, describing her search for the documents).

48. The <u>only</u> sworn statements filed in opposition to the motion for sanctions were those of AAG Velez, defendant Kathleen Ferdinand and non-party Donna Limiti, discussed above. None of those documents provided any explanation whatsoever for the defendants' failure to identify the documents in their interrogatory answers (certified by Jan Williamson, see Exhibit 16 at page 7), or providing any reason or excuse for the spoliation of those documents.

49. In a substantial expansion of their opposition to the sanctions motion on this summary judgment motion, defendants have submitted statements contained within the declarations of Gloria Hayes, Suresh Arya, Peter Uschakow, Jan Williamson and a further declaration of Kathleen Ferdinand.

50. Defendants did not submit a statement on behalf of OMRDD by Attorney Pawlowski, who appeared at each of the defendants' depositions on behalf of OMRDD, in connection with the documents subjected to spoliation with this motion or in their opposition to the sanctions motion currently pending before Magistrate Judge Freeman. No declaration by any other person was submitted on behalf of defendant OMRDD.

51. The striking absence of any information concerning chain of custody of the spoliated documents and lack of any explanation for the failure to identify them during discovery is discussed in detail in the Memorandum of Law submitted herewith.

52. This absence of information and reasonable (or any) explanation is especially peculiar because:

    (a) the logs must have been delivered to the deputy director's office (defendant Jan Williamson) pursuant BDC's own procedure, see **Exhibit 43** at Bates 1562, (requiring that all records be boxed and brought to the deputy director's office);

    (b) BDC sent two pages of the Special Observation Logs by fax to the Commission **Exhibit 40** at 0128, (fax cover page dated July 28, 2005, over Special Observation log pages) and **Exhibit 41** (log page produced by the Commission pursuant to subpoena bearing a July 28, 2005 fax date stamp identifying the sending as BDC).

    (c) The Special Observation log books were maintained in two separate places – the final book was on the date of Valerie's death in the custody of the direct care staff that was observing her (**Exhibit 41** at Bates 0130 showing log entries up until (9:30 pm, two minutes before Valerie died, see **Exhibit 12**, Death Transcript); the prior log books were maintained in either Wing storage area (Moving papers, Ferdinand Decl. at ¶24) or in the supervisor's office (opposition to sanctions motion filed as document 27, Ferdinand Decl. at ¶11).

**F.   Conclusion**

53. For the reasons set forth herein, in the Memorandum of Law submitted herewith and accompanying exhibits, the defendants' motion for summary judgment should be denied.

Dated:   September 8, 2008

                                                    Respectfully Submitted,

                                                    s/ _____
                                                   Jacques Catafago, Esq.