1

1

2  UNITED STATES DISTRICT COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  Estate of VALERIE YOUNG, by VIOLA
   YOUNG, as Administratrix of the
6  Estate of Valerie Young, and LORETTA
   YOUNG LEE,
7
                        Plaintiffs,
8
         -against-
9
   STATE OF NEW YORK OFFICE OF MENTAL
10 RETARDATION AND DEVELOPMENTAL
   DISABILITIES, PETER USCHAKOW,
11 personally and in his official
   capacity, JAN WILLIAMSON, personally
12 and in her official capacity, SURESH
   ARYA, personally and in his individual
13 capacity, KATHLEEN FERDINAND,
   personally and in her official
14 capacity, GLORIA HAYES, personally
   and in her official capacity,
15 DR. MILOS, personally and in his
   official capacity,
16
                        Defendants.
17
   - - - - - - - - - - - - - - - - - - - -x
18
              75 Morton Street
19            New York, New York

20            April 18, 2008
              10:25 A.M.
21

22

23

24

25

1

2      DEPOSITION of GLORIA HAYES, one of the

3  Defendants in the above-entitled action,

4  held at the above time and place, taken

5  before Gretchen A. Milton, a Shorthand

6  Reporter and Notary Public of the State of

7  New York, pursuant to the Federal Rules of

8  Civil Procedure, Notice and stipulations

9  between Counsel.

10

11

12           *     *     *

13

14

15  APPEARANCES:

16
        CATAFAGO LAW FIRM, P.C.
17           Attorneys for Plaintiffs
             350 Fifth Avenue
18           New York, New York 10118

19      BY:  JACQUES CATAFAGO, ESQ.

20

21      STATE OF NEW YORK
        OFFICE OF THE ATTORNEY GENERAL
22      ANDREW M. CUOMO
             Attorneys for Defendants
23           120 Broadway
             New York, New York 10271-0332
24
        BY:  JOSE L. VELEZ, ESQ.
25

```
                                 3

 1

 2     APPEARANCES:

 3     (Continued)

 4
       STATE OF NEW YORK
 5         OFFICE OF MENTAL RETARDATION AND
           DEVELOPMENTAL DISABILITIES
 6             75 Morton Street
               New York, New York 10014
 7
       BY:   PATRICIA DELORY PAWLOWSKI, ESQ.
 8

 9

10

11              *     *     *

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

17

```
 1                GLORIA HAYES
 2       A.   888 Fountain Avenue, Brooklyn,
 3   New York 11208.
 4            MR. VELEZ:  Counsel and I had
 5       discussion before we began this
 6       morning related to document requests
 7       made in prior depositions.  You
 8       requested handwritten notes from
 9       Dr. Milos, if there were any, as well
10       as any handwritten notes from the
11       members of the mortality review
12       conference.
13            It is my understanding that there
14       are no handwritten notes that have
15       been found related to those requests.
16            Now, with respect to the BDC
17       policy, if any, that has been
18       developed pursuant to Judith Baer's
19       letter of November 2005, I have been
20       informed that there is no formal
21       procedure which has been put in place.
22       Instead each individual consumer is
23       treated on a case-by-case basis.  Each
24       primary physician will put into effect
25       procedures regarding the treatment of
```

18

1          GLORIA HAYES
2     DVT individually.  Those are medical
3     instructions left by the physician,
4     and they are the medical procedures
5     that will be followed with respect to
6     patients at risk of DVT.
7          MR. CATAFAGO:  Thank you.
8          MR. VELEZ:  You are welcome.
9          MR. CATAFAGO:  Good morning,
10    Ms. Hayes.
11         THE WITNESS:  Good morning.
12         MR. CATAFAGO:  I'm going to ask
13    you some questions this morning.  If
14    at any time you don't hear me, or if
15    you don't understand the question, let
16    me know.  I will either rephrase or
17    repeat the question so it is clear to
18    you.
19         Unless you otherwise so state, I
20    am going to assume that you have heard
21    and that you understand the question.
22    I ask you to answer the questions to
23    the extent of your fullest present
24    recollection and ability, unless you
25    are directed otherwise by your

163

1        GLORIA HAYES
2   saw a memo that you had relating to
3   Valerie?
4       A.   The last time I saw one was the
5   one I wrote instructing the staff on how
6   to deal with her.
7       Q.   When was that?
8       A.   That was in 2005.
9       Q.   Where do you keep those records?
10      A.   Where?
11      Q.   Yes.
12      A.   In my office.
13      Q.   How voluminous or expansive is
14  that file?
15      A.   Four or five pages -- probably
16  four or five pages.
17      Q.   Can you have someone fax that
18  over to us?
19           MR. VELEZ:   Are you asking about
20      memos?
21           All those memos ended up in
22      Valerie Young's file; right?
23           THE WITNESS:   No.   These were
24      memos that I personally wrote.
25      Q.   You didn't put those into

164

1		GLORIA HAYES
2	Valerie's file?
3	A.  No, no, no.  I've got them.
4		MR. VELEZ:  These are memos that
5	you wrote?
6		THE WITNESS:  Yes.
7		MR. VELEZ:  Who did you write
8	these memos to?
9		THE WITNESS:  To the staff.
10		MR. VELEZ:  What happened to
11	those memos when you distributed them
12	to the staff?
13		THE WITNESS:  They were about
14	in-service training on how to deal
15	with her.  Like, for instance, that
16	people had to go with her into the
17	bathroom.
18		MR. VELEZ:  Are those records in
19	that ended up in the file?
20		MR. CATAFAGO:  I am asking the
21	questions here.
22	Q.  You never gave them -- whether or
23	not they ended up in the file --
24		MR. CATAFAGO:  She was supposed
25	to supply all documents.  They should

165

1        GLORIA HAYES
2   have been provided.
3        MR. VELEZ:  That is correct.  If
4   she writes a memo, that goes into
5   Valerie Young's records, and all that
6   has been produced, counsel.
7        MR. CATAFAGO:  Mr. Velez, if they
8   were provided to you, if you have
9   already produced them, if you want to
10  say that, fine, but I don't believe
11  that's correct.
12       They have not been provided.  If
13  you want to make that determination
14  and put it on the record, that's fine.
15  But she has now testified she has
16  documents that no one has produced.
17  As far as I understand it, she still
18  has them in her possession.
19       MR. VELEZ:  No, that's not
20  correct.  They have been provided to
21  you already.  You have everything that
22  was in the file.
23       MR. CATAFAGO:  They certainly
24  have been asked for.  I asked for
25  every single document that was in the

166

1          GLORIA HAYES
2    possession of all defendants.
3        Q.   You were asked to bring here
4    today every single document in your
5    possession.
6        A.   I'm sorry.  I didn't understand
7    that.  I am sorry.
8            MR. VELEZ:  There's a
9    misunderstanding here.
10           MR. CATAFAGO:  Then let's
11   straighten this out.
12       Q.   Did you produce them to your
13   attorneys?
14       A.   Everything I had was sent over to
15   the director's office.
16           MR. VELEZ:  Jan Williamson.
17           MR. CATAFAGO:  Okay.
18           MR. VELEZ:  So they were
19   provided.
20       Q.   What exactly is meant by standing
21   orders to the staff?
22       A.   It's only what I wrote...
23       Q.   These three or four or five
24   pages, what was it that you wrote in those
25   three or four or five pages?

167

1           GLORIA HAYES
2      A.   I don't remember.  It wasn't
3   much.  I only have what I wrote...
4   everyone has what they wrote.  I have only
5   what I wrote...
6           MR. CATAFAGO:  Your position is,
7      counsel, it was produced?
8           MR. VELEZ:  That is correct.
9      Q.   Do you have any special license
10  or licenses in connection with your job?
11     A.   No.
12     Q.   Have you ever testified before?
13     A.   No.
14     Q.   Following the death of Valerie
15  Young, did anyone ask you for any
16  information at all about her?
17     A.   What sort of information?
18     Q.   Like about her treatment and
19  care, did anybody ask you about that,
20  whether Judith Baer, or Jan Williamson, or
21  somebody from the Commission on Quality of
22  Care?
23     A.   No.
24     Q.   Or Peter Uschakow?
25     A.   No.