CQCAPD            Fax:5193881275            Feb  7 2008  17:56    P. 11

# Case Analysis Report
# Face Sheet

| | | | |
|---|---|---|---|
| Case Name: | **Valerie Young** | Investigator: | **Mark Rappaport** |
| QCCID: | **0506138** | Assigned: | **7/12/05** |
| DOD: | **6/19/05** | Report (Draft): | **August 2005** |
| AGE: | **49** | Report (Draft): | **October 24, 2005** |
| Inquiries: | **Mother – Viola Young** | | |

Residential Facility: **Brooklyn Developmental Center (BDC)**

Place of Death: **BDC**

Cause of Death Per Autopsy: **Pulmonary embolism due to deep vein thrombosis of lower extremities due to inactivity due to seizure disorder of undetermined etiology, natural.**

Reason for Investigation: **Unexpected death, questionable circumstances. Mother alleges neglect.**

Summary of Findings: **Died of a PE from DVT from inactivity. The facility did not adequately address the implications.**

Recommended Disposition:

    Commission Closure without recommendations

X    Commission Closure with recommendations

    Consult

    Board Review

CQC6

## Death Investigation Report
## Valerie Young

I. **INTRODUCTION**

A) <u>Report of Death</u>

The QCC-100 reports that Ms. Young suddenly collapsed on 6/19/05. Staff and EMS attempted resuscitation, but she was pronounced dead at Brookdale Hospital. The report indicated that the ME's verbal report was a PE due to DVT.

Mrs. Viola Young called initially alleging that her daughter did not receive appropriate care, noting that her daughter had suffered several falls, and did not have a CT scan. Mrs. Young called back after she received the death certificate, and stated that it said PE due to DVT due to inactivity.

B) <u>Scope of Investigation</u>

In investigating this case the Commission sought to determine:

1. Ms. Young's clinical and medical history
2. The nature and extent of care and treatment provided by BDC
3. The circumstances surrounding the incident and the cause of death.
4. The agency's investigation findings and any subsequent corrective actions taken.

C) <u>Methods</u>

During our investigation, I visited the facility (7/20/05). The following records were reviewed and persons interviewed:

<u>Records Reviewed</u>:
- BDC clinical records
- BDC QA materials (Investigation packet, Mortality Review)
- Autopsy

<u>Interviews</u>:
- Judy Beer, Ph.D., Incident Review Coordinator

CQC7

3

## II. FINDINGS

1. Clinical and Medical History

Valerie Young was a 49-year-old woman with diagnoses of profound MR, schizoaffective disorder/intermittent explosive disorder, seizure disorder, constipation (history of severe impaction), and mild EPS (psychotropics were adjusted during the past year). She was diagnosed with foot drop in the left foot with a high steppage gait. Medications included Zyprexa, Topamax, Remeron, Klonopin, Inderal, Tegretol, Prevacid, Metamucil, Colace, and Fleets Enemas 3x/week.

2. Care and Treatment at BDC

At the time of her Annual CFA in 4/05, Ms. Young's health was reported as stable, the primary concern being her behavior/psychiatric problems, including several outbursts requiring PRN medication a trial of Clozapine, and several ER visits and inpatient stays during the previous year. Due to several falls over the months before her death, she wore a helmet.

On 4/27/05 Valerie was issued a wheelchair with a padded seat and back, soft calf support was added to the leg rests (She had been falling, and on this date her Zyprexa dose was decreased). A subsequent work order noted that the footplate was adjusted, and leg extensions and fabricated calf pads were added.

Although it seems that the chair was issued in April 2005, I also found a note dated 2/3/05 indicating "located, repaired and installed bilateral elevating legrests," suggesting she may have been using a wheelchair prior to April. A 4/27/05 OT note says she arrived in a folding wheelchair, slumped and was given a new chair with the above noted modifications.

A 5/2/05 PT consult notes that ROM will be done twice a week (mat exercises, ambulation exercises, and ROM to upper and lower extremities).

A 5/10/05 PT progress note reports that adjustments were made to the chair.

A 5/20/05 OT progress note reports a repair to the chair.

On 5/28/05 the MD noted bilateral pretibial pitting edema (? 1 +) also bilateral feet pitting edema (? 1 +). No calf swelling and discoloration and tenderness. No ___ or Homan's test. Pt. with pretibial feet pitting edema, problem in the past also. Venus insufficiency positional (sitting in wheelchair). To continue with leg elevation.

CQC8

4

3. **Circumstances and Cause of Death**

On 6/19/05, at about 8:30 p.m. Ms. Young collapsed as staff were taking her to the shower. Emergency measures were instituted including CPR started, 911 called, Code Blue called (oxygen and IV started). EMS arrived, administered atropine, and transported her to the ER at Brookdale where she was pronounced dead at ~9:30 p.m.

4. **Investigation**

**BDC**

The Mortality Review provided a summary of Ms. Young's medical history, noted that her medication regimen did not predispose her to pulmonary embolism. The issue of her edema was addressed, and the reviewers noted that past testing did not reveal reasons for concern. The most recent episode of edema was reviewed, and it was noted that this was an unlikely sign for DVT. A Homan's test was negative. The review indicates that Ms. Young was ambulatory, but used a WC for transportation over long distances. The review also noted that staff working with her may not have encouraged her to walk for fear of her falling. Some preventive measures were discussed, and recommendations included:

1. For sedentary consumers who are ambulatory, or where otherwise indicated, physicians will include orders for staff to walk with the consumers periodically during the day.

2. For non-ambulatory consumers, physicians will consider the use of elastic stockings or pressure boots where tolerated.

**CQC**

When I met with Judy Beer, I asked her to make sure the Mortality Review focuses on inactivity. Did she get out of the chair, did she get any ROM (she received PT two or three times a week for foot drop)?

The review noted that the cause of death was a pulmonary embolism, but did not include the fact that the ME determined it was related to inactivity. The review addressed some preventive measures (e.g., anticoagulant therapy, elastic stockings, walking during the day), but there was nothing about formal assessment of DVT risk, ROM, ensuring position changes at least every two hours, testing, etc.

The documentation that I reviewed provided little information as to Ms. Young's actual level of activity. The Mortality review says that she was ambulatory and used the wheelchair for transfers, but at the same time said that staff tended to not have her walk for fear of her falling. I suspect that she was in the chair much of the time (for example,

CQC9

5

the sheet tracking her whereabouts/activity on evening of death (15-minute checks) suggests that she sat in her wheelchair from 3:00 p.m. until 8:00 p.m. (nothing says she was up and out of the wheelchair).

Additionally, the elevation of her legs to address the edema may have increased her risk for DVT.

They also did not address the issue of obtaining other tests (e.g., Doppler).

There was no nursing care plan for the use of the WC and elevated legs.

In addition, I noted that the MARs are signed for medications administered on 5/20/05. She died on 5/19/05.

### III. CONCLUSIONS

While there can be no clear cause and effect conclusion, the autopsy attributes the death to a PE from DVT due to inactivity. My concerns include:

- No assessment for DVT risk was made when the wheelchair was obtained.
- No ROM was ordered.
- Thromboembolytic (TED) stockings were not ordered
- No formal monitoring of her level of activity was implemented.
- It is possible additional testing may have revealed the DVT before the PE occurred.
- Nursing issues were not addressed in the Mortality Review (nursing care plan, ROM, monitoring level of activity, etc.). It appears that there was no representation from Nursing in the review process.

### IV. RECOMMENDATIONS

The DDSO should develop and implement policies and procedures to address DVTs, including consideration of developing a DVT risk assessment process/form. Perhaps they should establish standardized medical regimen (testing, TEDs, anticoagulants/aspirin, etc.) when the DVT risk is noted. Nursing policies and procedures should address having a Nursing Care Plan, nursing assessment for DVT, and the DDSO should require documentation of level of activity for consumers with impaired/restricted mobility. In addition, the Physical Therapy department could be asked to establish guidelines for ROM. Perhaps PT should always be consulted when a consumer has limited or impaired mobility.

I will append a copy of a CQC "Could This Happen" addressing DVT/PE's.

The DDSO also needs to address the medication errors noted above

CQC10