IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ESTATE OF VALERIE YOUNG, et al.,

    plaintiffs,

- against -

STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL
DISABILITIES, et al.,

    defendants.

ECF Case

Case No.: 07-CV-06241 (LAK)

**JOINT PRETRIAL ORDER**

USDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/08

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. Rule 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I. NATURE OF THE CASE

This is an action brought pursuant to 42 USC §1983 for claims arising under the Fourteenth Amendment to the United States Constitution, The Americans with Disabilities Act, 42 USC §12131, et seq. and §504 of the Rehabilitation Act of 1976 seeking damages for the mistreatment and ultimately, death at age 49 of Valerie Young ("Valerie"), a profoundly mentally retarded woman who was in the custody and care of the defendants.

This action seeks damages in favor of the estate of the deceased; and for Viola Young, Valerie's mother, Sidney Young, Valerie's brother and Loretta Lee, Valerie's sister for their loss of companionship and familial relations.

## II. JURY/NON-JURY

All parties have demanded a trial by jury.

## III. STIPULATED FACTS

The parties have not stipulated to any facts.

## IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

## A. Plaintiff's Contentions

Decedent Valerie Young ("Valerie") was a profoundly mentally retarded adult who was in the care and custody of defendant the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") and the State of New York ("State"). Valerie resided at the Brooklyn Developmental Center, ("BDC") a residential facility for developmentally disabled persons operated by OMRDD. BDC is an Intermediate Care Facility/Mental Retardation ("ICF/MR") within the meaning of and pursuant to, *inter alia*, 42 CFR Parts 440, 456, 483, 485 and corresponding local regulations found at Title 14, New York Code, Rules and Regulations.

The individual defendants are persons who either provided care directly to Valerie or were supervisory officers at BDC. They are: Peter Uschakow - Director of BDC; Jan Williamson - Deputy Director for Operations of BDC; Suresh Arya - Deputy Director for Operations of BDC (overlapping with defendant Williamson); Kathleen Ferdinand - Valerie's "Treatment Team Leader"; Gloria Hayes - Resident Unit Supervisor and a member of Valerie's Treatment Team; Jovan Milos - treating physician and member of Valerie's Treatment Team. The defendants were sued both personally and in their official capacities.

On June 19, 2005, Valerie died from a Pulmonary Embolism caused by a DVT as the result of inactivity. During the last months of her life, Valerie was largely confined to a wheelchair or was otherwise maintained without mobility as a result of sedative medication and untreated and/or inadequately treated insomnia, untreated and/or inadequately treated back pain and an untreated and/or inadequately treated drop foot.

Valerie died because defendants failed to take prophylactic measures meeting minimum professional standards.

Critical to the evaluation of care provided to Valerie were certain logbooks of clinical observations, known as special observation logs; providing detailed information about the decedent every fifteen minutes, twenty-four hours every day from November 2004 up to and including the date of Valerie's death, June 19, 2005. Defendants destroyed these special observation logbooks and/or caused them to be destroyed, actions consistent with a destruction of material evidence and amounting to an effort to "cover up" the defendants' treatment of decedent.

An investigation of Valerie's death conducted by the New York State Commission on the Quality of Care and Advocacy for Persons with Disabilities ("Commission") established deficiencies and departures from the standards of care applicable to an ICF/MR. Defendants acknowledged those deficiencies, promised to correct those deficiencies, but did not do so.

Liability for defendants' violation of the Fourteenth Amendment to the United States Constitution (personal capacity claims) is governed by *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452 (1982) explained and followed by the Second Circuit in *Society for Goodwill to Retarded Children v. Cuomo*, 737 F.2d 1239 (1984) holding that the plaintiffs must show that defendants' conduct was a substantial departure from minimum professional standards.

Liability under the Americans with Disabilities Act and §504 of the Rehabilitation Act (official capacity claims) is governed by *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003), cert. denied, 541 U.S. 936, 124 S. Ct. 1658, 158 L. Ed. 2d 356 (2004), requiring that

plaintiffs show that the decedent was a "qualified individual" and was denied the benefit of the services, programs or activities of the entity (here, BDC) or was otherwise discriminated against and that the exclusion or denial or discrimination was by reason of decedent's disability.

### B. Defendant's Contentions

Brooklyn Developmental Disabilities Service Office ("BDDSO") is a residential treatment facility operated by the New York Office of Mental Retardation and Developmental Disabilities ("OMRDD"). Decedent was a 49-year old woman who had resided at the BDDSO since 1990. Decedent had a history of profound mental retardation, seizure disorder, schizoaffective disorder, tardive dyskinesia, constipation, right brachial plexopathy, and left foot drop due to mononeuropathy.

Decedent had a normal echocardiogram and a negative venous duplex ultrasound in 2001. Decedent had frequent episodes of agitation, aggressive behavior and behavioral decompensation requiring psychiatric hospitalization and/or frequent adjustment of her psychotropic medications. In March of 2005, it was noted that decedent's gait was worsening and she was falling more frequently. In April of 2005, decedent had an extensive annual physical and psychiatric evaluation that included neurological consultation, X-rays of the lumbar spine, and physical therapy evaluation. X-rays of her lumbar spine were negative. An EMG was scheduled for June 3, 2005 to evaluate her gait disturbance and foot drop.

Because of frequent falls, decedent's medication regimen was adjusted with reduction in her Zyprexa dose. After a fall that caused a laceration on her scalp on May 20, 2005, a wheel-chair was used for all of decedent's mobility needs such as transfer between buildings, out-of-facility appointments and outings into the community. However, she continued to have physical therapy and walked with assistance. On May 27, 2005, decedent was noted to have bilateral ankle edema (swelling), but had no calf tenderness and a negative Homann's sign (a physical examination test for deep vein thrombosis). Her edema was assumed to be positional (i.e., her legs in a prolonged dependent position) and leg elevation during rest periods was recommended.

On June 19, 2005, decedent collapsed in the shower. Resuscitative efforts were instituted by BDDSO staff including CPR, intravenous dextrose, and oxygen. After CPR, she again became responsive and was agitated. On the arrival of the paramedics, decedent was given intravenous atropine and was intubated for ventilatory support. She was transported to the hospital where she was pronounced dead shortly thereafter. At autopsy decedent was found to have bilateral embolism and bilateral deep vein thrombosis ("DVT").

Decedents' care providers could not have reasonably anticipated that she would develop DVT and a fatal pulmonary embolism because she had none of the currently accepted risk factors or symptoms that are recognized to increase the likelihood of a diagnosis of DVT. Decedent also continued to receive physical therapy, continued to ambulate with assistance of BDDSO staff, and appeared to remain completely asymptomatic for the three weeks preceding her death. The oversight, monitoring, evaluation, and treatment of decedent by BDDSO staff was thorough and according to the accepted standard of care.

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted. This Court lacks jurisdiction over the subject matter of the cause of actions set

forth in the Complaint in that the federal claims do not rise to a constitutional level and this Court lacks subject matter jurisdiction over any state law claims by Plaintiffs. To succeed on their substantive due process claims, Plaintiffs must show that the state's action was arbitrary, conscience-shocking, or oppressive in a constitutional sense and not merely incorrect or ill-advised. Catanzaro v. Weiden, 188 F.3d 56, 64 (2d Cir. 1999).

In the context of a state's affirmative duties arising out of the fact that an individual is in the custody or care of the state, officials may be liable under 42 U.S.C. § 1983 only if their omissions were a substantial factor leading to the denial of a constitutionally protected liberty or property interest, and the officials displayed a mental state of deliberate indifference with respect to those rights. Doe v. New York City Dept. of Social Servs., 649 F.2d 134, 141 (2d Cir. 1981).

In determining whether the State has met its constitutional obligations to mentally retarded residents of state facilities, decisions concerning the care of such individuals that are made by an appropriate professional are presumed valid and may only be challenged if the decision "is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Youngberg v. Romeo, 457 U.S. 307, 323 (1982).

The alleged injuries sustained by Plaintiffs in this action were caused in whole or in part by the conduct of one or more parties or entities for whose conduct these Defendants are not responsible. Plaintiffs cannot recover damages against individual supervisory defendants based upon the legal theory of respondeat superior.

Plaintiffs have failed to state a claim against Defendants by failing to allege with specificity their personal involvement in the events which are alleged to have caused Plaintiffs' injuries. Defendants are protected from liability by qualified immunity because at all relevant times herein acted without malice, in good faith, and under the reasonable belief that their actions were reasonable and did not violate any clearly established constitutional rights of Plaintiffs. Any alleged conduct or omission was, in whole or in part, properly within the discretionary authority committed to Defendants to perform their official functions, and the relief requested would constitute an improper intrusion by the federal judiciary into that discretionary authority. Plaintiffs were not deprived of any rights, privileges or immunities secured to them under the United States Constitution, the laws of the United States, or the laws of the State of New York.

Most cases Section 504 of the Rehabilitation Act and Title II of the ADA adopt the same standards which prohibit discrimination against qualified individuals by requiring that they receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations. Henrietta D. V. Bloomburg, 331 F.3d 261, 272 (2d Cir. 2003). Plaintiffs must establish that decedent was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or that she was subjected to discrimination by that entity. See, e.g., 42 USC § 12132.

Defendants have no official policy, custom, statute or regulation which permits or promotes the violation of any person's civil rights, and, moreover, no official policy, custom, pattern or practice of Defendants caused Plaintiffs any injury. Any claims brought pursuant to 42

U.S.C. Section 1983 against the Defendants in their official capacity for money damages are barred by the Eleventh Amendment to the United States Constitution. Defendants at no time acted willfully or in malicious disregard of Plaintiffs' constitutional rights. As such, Plaintiff is not entitled to punitive or other relief.

## V. ISSUES TO BE TRIED

Whether decedent Young was denied necessary health and related care by OMRDD and the individual Defendants which caused her physical and emotional suffering and pain, and hedonic losses, and ultimately her death within the meaning of the Fourteenth Amendment to the United States Constitution.

Whether decedent Young was denied health and related care which caused her physical and emotional suffering and pain and ultimately to her death as the result of discrimination within the meaning of the ADA and Rehabilitation Act.

Whether the plaintiffs herein suffered a loss of companionship and familial relations as a result of the death of Valerie Young.

## VI. PLAINTIFF'S EXHIBITS

**PX 1**  Adaptive Equipment Shop February 3, 2005 Work Request (Bates 8721);

**PX 2**  Adaptive Equipment Shop April 26, 2005 Work Request (Bates 8720);

**PX 3**  Adaptive Equipment Shop May 10, 2005 Work Request (Bates CQC196);

**PX 4**  Adaptive Equipment Shop May 20, 2005 Work Request (Bates CQC195);

**PX 5**  Autopsy Report dated June 20, 2005, Office of Chief Medical Examiner, City of New York, Frede I. Frederic, MD (Bates 0099 - 0102);

**PX 6**  Case Conference of December 17, 2004 (Bates 7781-82);

**PX 7**  Case Conference of December 24, 2004 (Bates 7779-80);

**PX 8**  Case Conference of November 5, 2005 (Bates 7783-84);

**PX 9**  Death Transcript, New York State Department of Health and Hygiene re: Valerie Young Denise Young (Bates P000010);

**PX 10**  Defendants' Initial Disclosure pursuant to Rule 26(a)(1);

**PX 11**  Defendants' Interrogatory Answers and Production Response dated November 30, 2007;

**PX 12**  Fax cover page of July 28, 2005 July 28, 2005 with attached documents (Bates 0128 through 0130);

**PX 13**  Incident Report June 25, 2004 (Bates 8976-8988);

PX 14  Incident Report, June 24, 2003 (Bates 8815-17);

PX 15  Incident Report, May 20, 2005 (Bates 0199 *et seq.*);

PX 16  Individualized Program Plan Review of January 12, 2005 (Bates 7787 – 7794);

PX 17  Individualized Program Plan Annual of April 13, 2005 (Bates 7629 – 7682);

PX 18  Interdisciplinary Treatment Team Notes March 14, 2005 – June 19, 2005 (Bates 8153 and 8186 – 8192).

PX 19  Letter dated November 5, 2005 directed to the Commission in response to their investigation of the death of Valerie Young, sent on behalf of BDC under the signature of Judith Beer (Bates CQC5);

PX 20  Letter November 15, 2005, New York State Commission on the Quality of Care directed to defendant Peter Uschakow (Bates CQC14);

PX 21  Letter November 15, 2005, New York State Commission on the Quality of Care directed to plaintiff Mrs. Viola Young (Bates CQC13);

PX 22  Letter October 24, 2005, New York State Commission on the Quality of Care to Peter Uschakow (final agency determination) (Bates 0095 - 0096) with attachment (Bates CQC267 - CQC271);

PX 23  Log Books (Core Office) from March 21, 2005 through June 16, 2005, (Bates 9917 – 9976);

PX 24  Log Books (Wing 315) from March 18, 2005 through June 23, 2005, (Bates 9977 – 10069);

PX 25  Log entry page (Special Observation) timed and dated from 3:00 pm - 8:15 pm on June 19, 2005 (Bates CQC76)

PX 26  Log entry pages (Special Observation) timed and dated from 3:00 pm - 9:30 pm on June 19, 2005 (Bates 0129 - 0130);

PX 27  Manual, Policy & Procedure, Brooklyn Developmental Center;

PX 28  Memorandum of February 16, 2005 from defendant Hayes to one Donna Carter with a copy to defendant Ferdinand (Bates 0273);

PX 29  Memorandum of January 20, 2005 from defendant Ferdinand to all Building 3-1 supervisors (Bates 0274);

PX 30  Memorandum of January 26, 2005 from defendant Ferdinand to defendant Hayes (Bates 0267);

PX 31  Memorandum of July 13, 2005 to Peter Uschakow regarding a complaint made by Mrs. Viola Young concerning Valerie's treatment at BDC (Bates 0003);

**PX 32**  Memorandum of November 5, 2004, renewed December 22, 2004 from defendant Ferdinand directed to all staff (Bates 0013);

**PX 33**  Neurology Consultation and Report dated April 26, 2005 (Bates 8134);

**PX 34**  Nursing Notes March 16, 2005 – June 19, 2005 (Bates 8342-8349);

**PX 35**  Occupational Therapy Consultation and Report dated April 21, 2005 (Bates 8177);

**PX 36**  Occupational Therapy Consultation and Report dated May 20, 2005 (Bates 8178)

**PX 37**  Occupational Therapy Note dated April 27, 2005 (Bates CQC197);

**PX 38**  Physical Therapy Consultation dated April 27, 2005 and report dated May 2, 2005 (Bates 8176);

**PX 39**  Physical Therapy Discharge Notification, October 1, 2003 (Bates 8723);

**PX 40**  Podiatry Consultation and Report dated May 11, 2005 (Bates 8179);

**PX 41**  Psychiatry Consultation and Report dated September 17, 2004 (Bates CQC138);

**PX 42**  Radiology Consultation and Report dated May 5, 2005 (Bates 8180-81);

**PX 43**  Report, Case Analysis and Death Investigation, New York State Commission on Quality of Care (Bates Nos. CQC6 - CQC10);

**PX 44**  Case Conference of April 20, 2005 (Bates 7743-44).

**PX 45**  Treatment Team (ITT) Notes November 1 - 5, 2004 (Bates 8147);

**PX 46**  Undated note produced pursuant to Subpoena by the New York State Commission on the Quality of Care documenting Mrs. Viola Young's complaint concerning the death of her daughter, Valerie (Bates CQC26);

Plaintiffs reserve the right, in the event that the Court rules in Plaintiffs' favor on any motions in limine, to request the exclusion or redaction of any information from any document to be offered at trial by either party in that pertains to any defense that the Court has ruled is not at issue in this trial.

Plaintiffs reserve the right to modify their exhibit or witness list pursuant to the Court's rulings on any motion in limine.

Plaintiffs further reserve the right to introduce the deposition testimony of witnesses during cross-examination of those witnesses, and to introduce or offer into evidence any other impeachment material as needed.

## VII. DEFENDANT'S EXHIBITS

| | |
|---|---|
| **DX A** | Plaintiff's Complaint; |
| **DX B** | Report of Death, dated June 21, 2005 (Bates 0081-0084); |
| **DX C** | Investigation report, dated June 24, 2005 (Bates 0087-0093); |
| **DX D** | Letter from Quality Commission to Judith Beer, dated November 5, 2005, in response to their investigation (Bates 0094); |
| **DX E** | Letter from Mark Rappaport to Peter Uschakow, dated October 24, 2005, with final agency determination (Bates 0095-0096); |
| **DX F** | Report of Autopsy, dated August 3, 2005 (Bates 0099-0102); |
| **DX G** | Mortality Review, dated July 26, 2005 (Bates 0110-0113); |
| **DX H** | Investigative Report for Incident of May 20, 2005, dated May 26, 2005 (Bates 0205-0209); |
| **DX I** | Investigative Reports for Incident of December 21, 2004, dated December 28, 2004, January 10 and 24, 2005 (Bates 0251-0260); |
| **DX J** | Special Case Conference Summary of Meeting for Incident of December 21, 2004, dated December 24, 2004 (Bates 0262); |
| **DX K** | Case Conference, dated April 20, 2005 (Bates 7743-7744); |
| **DX L** | Case Conference of November 5, 2004 (Bates 7783-7784) |
| **DX M** | Case Conference of December 17, 2004 (Bates 7781-7782); |
| **DX N** | Case Conference of December 24, 2004 (Bates 7779-7780): |
| **DX O** | Individualized Program Plan Review of January 12, 2005 (Bates 7787 - 7794); |
| **DX P** | Individualized Program Plan Annual of April 13, 2005 (Bates 7629-7682); |
| **DX Q** | Special Case Conference, dated April 20, 2005 (Bates 7743-7744); |
| **DX R** | Individual Program Plan Review Meeting, dated October 18, 2004; |
| **DX S** | Neurology Consultation and Report, dated April 26, 2005 (Bates 8134); |
| **DX T** | Interdisciplinary Treatment Team Notes, January 16 - June 19, 2005 (Bates 8152-8155, 8179-8192); |
| **DX U** | Medical Report, April 7, 2005 (Bates 8156-8157); |
| **DX V** | AIMS Scale, April 7, 2005 (Bates 8158-8159); |

DX W    Medical Report for left foot drop, dated May 2, 2005 (Bates 8176);

DX X    Medical Report for helmet, dated April 27, 2005 (Bates 8177-8178);

DX Y    Radiology Consultation and Report, dated May 5, 2005 (Bates 8180-8181);

DX Z    Medication and Treatment Records, November 2004 to June 2005 (Bates 8449 - 8512);

DX AA   Medication Reviews, October 2004 to April 2005 (Bates 8685- 8687);

DX AB   Letter to Viola Young regarding medication, dated January 12, 2005 (Bates 8743-8746);

DX AC   Letter to Viola Young regarding medication, dated April 24, 2005 (Bates 8747-8746-8750);

DX AD   Clinical Nursing Notes, October 2004 to June 2005 (Bates 8341-8358);

DX AE   Log Book entries for December 2004 to June 2005 (Bates 9089-9155, 9917-10069);

DX AF   Defendants' expert Diane Sixsmith's expert and rebuttal reports;

DX AG   Plaintiffs' expert Richard Bindie's expert and rebuttal reports;

DX AH   Behavior Management Review Committee Addendum, Dated April 8, 2005 (Bates 8761-8765);

DX AI   Behavior Management Review Committee Addendum, Dated January 6, 2005 (Bates 8775-8777);

DX AJ   Evaluation Summary and Service Plan, dated May 2, 2005 (Bates 8691); and

DX AK   Clinical Nursing Notes from January 2004 to June 2005 (Bates 8341-8385).

Defendants reserve the right, in the event that the Court rules in defendants' favor on their motions in limine to limit the scope of the issues to be tried, to request the exclusion or redaction of any information from any document to be offered at trial by either party that pertains to claims that the Court has ruled are not at issue in this trial.

Defendants also reserve the right to modify their exhibit or witness list pursuant to the Court's rulings on the motions in limine.

Defendants further reserve the right to introduce the deposition testimony of witnesses during cross-examination of those witnesses, and to introduce or offer into evidence any other impeachment material as needed.

## VIII.   STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Plaintiffs object to the admission into evidence of the expert witness reports of the parties' retained experts.

## IX. PLAINTIFF'S WITNESS LIST

Arya, Suresh (Defendant)

Bindie, Richard, M.D. (Plaintiff's expert forensic pathologist)

Ferdinand, Kathleen (Defendant)

Hayes, Gloria (Defendant)

Lee, Loretta (Plaintiff, decedent's sister)

Milos, Jovan (Defendant)

Rappaport, Mark (Investigator, New York State Commission on the Quality of Care and Advocacy for Persons with Disabilities)

Uschakow, Peter (Defendant)

Williamson, Jan (Defendant)

Young, Sidney (Plaintiff, decedent's brother)

Young, Viola (Plaintiff, decedent's mother)

Plaintiffs reserve the right to call any of the Defendants' witnesses during their case in chief, and reserve the right to call rebuttal witnesses.

## X. DEFENDANT'S WITNESS LIST

1. Peter Uschakow, BDDSO Director, retired (Defendant, he is familiar with the policies and practices of OMRDD with regard to medical care and treatment provided to decedent Valerie Young at BDDSO.);

2. Jan Williamson, BDDSO Deputy Director Operations (Defendant, she is familiar with the policies and practices of OMRDD with regard to medical care and treatment provided to decedent Valerie Young at BDDSO.);

3. Gloria Hayes, BDDSO Residential Unit Supervisor (Defendant, she is familiar with the medical care and treatment provided to decedent Valerie Young at BDDSO.);

4. Kathleen Ferdinand, BDDSO Treatment Team Leader (Defendant, she is familiar with the medical care and treatment provided to decedent Valerie Young at BDDSO.);

5. Dr. Jovan Milos, BDDSO Medical Doctor Jovan Milos (Defendant, he is familiar with the medical care and treatment provided to decedent Valerie Young at BDDSO.);

6. Suresh Arya, HVDDSO Deputy Director Operations Suresh Arya (Defendant, he is familiar with the medical care and treatment provided to decedent Valerie Young at BDDSO.);

7. Rappaport, Mark (Investigator, New York State Commission on the Quality of Care and Advocacy for Persons with Disabilities);

8. Beer, Judith (BDDSO Quality Assurance Coordinator) and,

9. Dr. Diane M. Sixsmith, M.D., M.P.H., FACEP (Defendants' medical expert).

Defendants reserve the right to call any of the Plaintiff's witnesses during their case in chief, and reserve the right to call rebuttal witnesses.

## XI. RELIEF SOUGHT

Plaintiffs seeks general damages for pain and suffering) and hedonic losses for the Estate of Young, and damages for loss of companionship and familial relations on behalf of plaintiffs Viola Young (mother), Loretta Lee (sister) and Sidney Young (brother).

//

[signature]
U.S.D.J.
7/2/08

Respectfully submitted by:

OFFICE OF ANDREW M. CUOMO, ATTORNEY
GENERAL OF THE STATE OF NEW YORK

[signature]
Jose L. Velez
Edward Curtis
Assistant Attorneys General
120 Broadway, 24th Floor
New York, NY 10271-0332
Tel.: (212) 416-8164/8641
Counsel for Defendants

Dated: July 1, 2008
New York, New York

CATAFAGO LAW FIRM, PC

[signature]
Jonathan Bauer, Esq.
Jacques Catafago, Esq.
Empire State Building
350 Fifth Avenue, Suite 4810
New York, NY 10118
Tel.: (212) 239-9669
Counsel for Plaintiffs

Dated: July 2, 2008
New York, New York