IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ESTATE OF VALERIE YOUNG, et al.,                    ECF CASE

                                                    Case No.: 07-CV-06241-LAK-DCF

       plaintiffs,

  - against -

STATE OF NEW YORK OFFICE OF MENTAL
RETARDATION AND DEVELOPMENTAL
DISABILITIES, et al.,

      defendants.

------------------------------------------------------------------

## CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Jonathan Bauer, Esq. and
the Catafago Law Firm, PC**
Empire State Building
350 Fifth Ave. Suite 4810
New York, NY 10118
212-239-9669
212-239-9688 (fax)
catafagolaw@verizon.net

*Attorneys for Plaintiff*

# **Table of Contents**

Table of Authorities

Introduction..................................................................................................................1

Facts ...........................................................................................................................2

    A.    The Treatment and Death of Valerie Young ....................................................2

    B.    Procedure Relevant to this Opposition............................................................6

        (i)    In their initial disclosure, interrogatory answers and production responses, defendants failed to identify, did not produce and omitted any reference to the 15-Minute Checks Log Books ................................7

        (ii)   Defendants forcefully and definitively stated that all documents have been produced throughout the course of discovery .....................................8

Argument ...................................................................................................................10

    A.    Standards on this Motion for Summary Judgment..........................................10

    B.    Defendants failed to meet minimum professional standards in their care and treatment of Valerie Young, violating the Fourteenth Amendment ....................................................................................11

        (i)    Defendants failed to meet the applicable standard of care, requiring prophylactic measures for persons, such as Valerie Young, who are at risk of DVT by reason of inactivity......................................11

        (ii)   The available evidence demonstrates that Valerie Young was a person at risk for DVT....................................................................................12

        (iii) Missing Documents ...............................................................................15

    C.    Liability of the defendants .............................................................................16

        (i)    Defendant Jovan Milos...............................................................................16

        (ii)   Defendants Ferdinand and Hayes................................................................16

        (iii) Defendants Uschakow and Williamson..................................................17

        (iv) Defendant Arya.......................................................................................18

Conclusion .................................................................................................................19

# <u>Table of Authorities</u>

**<u>Cases</u>**

*Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir. 1989) ........................ 18

*Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 254 (2d Cir. 2001).................... 18

*Society for Goodwill to Retarded Children v. Cuomo*, 737 F.2d 1239 (1984) ............... 1

*Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452 (1982) ........................ 1

**<u>Statutes</u>**

14 NYCRR §633.99(t) ........................ 2

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)........................ 11

NY Mental Hygiene Law §16.13 ........................ 2

**<u>Federal Statutes, Rules & Regulations</u>**

42 CFR §483.450(e)(1) ........................ 6

Fed. R. Civ. P. Rule 26(a)(1)........................ 7, 10

Fed. R. Civ. P. Rule 33(d) ........................ 8

**<u>State Statutes and Regulations</u>**

14 NYCRR §633.17(11) ........................ 6

# **Introduction**

Valerie Young was a profoundly mentally retarded adult who was in the care and custody of defendant the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") and the State of New York ("State"). Valerie resided at the Brooklyn Developmental Center, ("BDC") a residential Intermediate Care Facility for developmentally disabled persons operated by OMRDD.

The individual defendants are persons who either provided care directly to Valerie or were supervisory officers at BDC. They are: Peter Uschakow - Director of BDC; Jan Williamson - Deputy Director for Operations of BDC; Suresh Arya - Deputy Director for Operations of BDC (overlapping with defendant Williamson); Kathleen Ferdinand - Valerie's "Treatment Team Leader"; Gloria Hayes - Resident Unit Supervisor and a member of Valerie's Treatment Team; Jovan Milos - treating physician and member of Valerie's Treatment Team. The defendants were sued both personally and in their official capacities.

The applicable law is well-established. Defendants must provide care and treatment to residents of Intermediate Care Facilities/Mental Retardation ("ICF/MR") meeting minimum standards within the meaning of *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452 (1982) as explained and followed by the Second Circuit in *Society for Goodwill to Retarded Children v. Cuomo*, 737 F.2d 1239 (1984) (holding that the plaintiffs must show that defendants' conduct was a substantial departure from minimum professional standards).

The applicable standards do not appear to be disputed by the parties; however the facts of this case are in sharp dispute.

# Facts

**A.    The Treatment and Death of Valerie Young**

On June 19, 2005, Valerie died from a Pulmonary Embolism caused by a DVT as the result of inactivity.  **Exhibit 49** at page 1 (Bates CQC6) New York State Commission on the Quality of Care and Advocacy for Persons with Disabilities ("Commission") Case Analysis and Death Investigation Report dated October 24, 2005 ("Commission Investigation"); see also, **Exhibit 4**, Autopsy Report, New York City Office of the Medical Examiner. The Commission summarized its finding thus: "[Valerie] Died of a PE from DVT from inactivity. The facility did not adequately address the implications." **Exhibit 49**, Commission Investigation (emphasis added).

The Commission's investigation of Valerie's death was initially opened in response to a complaint made by plaintiff Viola Young, Valerie's mother, on July 8, 2005. **Exhibit 54**, undated note produced by the Commission pursuant to subpoena (Bates CQC26). The investigation proceeded in light of a subsequent complaint made by Mrs. Young after she received the cause of death information. **Exhibit 49**, Commission Investigation at page 2 (Bates CQC7).

We note that independent of Mrs. Young's complaint, the Commission had a legal obligation to investigate Valerie's death as a matter New York State law, and the defendants have had at all times an independent obligation to cooperate fully with any investigation. NY Mental Hygiene Law §16.13 (obligation to cooperate); 14 NYCRR §633.99(t) (Commission must review all deaths in all OMRDD operated or licensed facilities).

Defendants OMRDD, Uschakow, Williamson and Ferdinand were aware that Mrs. Young had made a complaint concerning the death of her daughter.  *E.g.*, **Exhibit 46**, July 13, 2005 Memorandum by Judith Beer directed to Peter Uschakow with copies to defendants Williamson

and Ferdinand (Bates 0003) advising them that an investigator would be reviewing Valerie's death and that Mrs. Young had made a complaint.

The Commission found departures from the standards of care at BDC and directed corrections. **Exhibit 34**, October 24, 2005 Final Determination, Commission (Bates 0095-06). The Commission specifically recommended that to correct their departures, BDC should:

> Obtain or develop a DVT risk assessment process/form
>
> Establish standards for a medical regimen when DVT is suspected (testing, TEDs anticoagulants/asperin, etc.).
>
> Establish nursing procedures (Nursing Care Plan, nursing assessment) for DVT.
>
> Establish documentation requirements to track the level of activity for consumers with impaired/restricted mobility.
>
> Request the Physical Therapy department establish guidelines for range of motion (ROM) for mobility impaired/restricted consumers
>
> Obtain PT consults addressing DVT risk/prevention when a consumer has limited or impaired mobility.
>
> **Exhibit 34**, Final Determination at page 2 (Bates 0095A)

Defendants sent a purported plan of correction to the Commission. **Exhibit 35**, November 5, 2005 letter over the signature of Judith Beer (Bates CQC5). In a letter directed to defendant Uschakow dated November 15, 2005, the Commission indicated satisfaction with the BDC plan to correct the departures identified in their October 24 Determination and closed their file. **Exhibit 36**, Letter to Peter Uschakow. In light of the November 5 letter (**Exhibit 35**), the Commission also wrote to Mrs. Viola Young to inform her that the Commission "identified several concerns about the care and treatment provided" and based upon the representations in the BDC November 5 letter, assuring Mrs. Young that "the proposed changes should help preventing a

similar incident from recurring." **Exhibit 37**, letter of November 15, 2005, Commission to Mrs. Viola Young (Bates CQC13).

However, notwithstanding their representations to the Commission, there was and is no plan of correction and the plan alluded to in the BDC letter of November 5, 2005 (**Exhibit 35**) never actually existed and was not implemented. **Exhibit 21** Hayes Deposition at pages 17-18, Statement on the Record of Jose L. Velez, Esq. Therefore, defendants' letter (**Exhibit 35**) was sent for the purpose of closing the State Investigation and without any intention of correcting the deficiencies that led to Valerie's death.

The Commission in its investigation noted that there was little information as to Valerie's actual level of activity; (**Exhibit 49**, Death Investigation at CQC9; **Exhibit 34**, Final Determination at Bates 0095A) and makes reference to the two 15-minute checks log pages submitted herewith as **Exhibit 40**. Nonetheless the Commission suspected that Valerie spent extended periods of time in her wheelchair. **Exhibit 34** at page 1 (Bates 0095). See also **Exhibit 9**, May 2, 2005 Physical Therapy Report finding, *inter alia*, that Valerie was only able to walk with the assistance of staff, and then for only 100 feet requiring two staff assistants (Bates 8176).

The Commission also expressed the suspicion that "Ms. Young may have spent extended period of time in her wheelchair." **Exhibit 34**, Commission Determination at page 1, Bates 0095. The Commission's suspicion is confirmed by documents that were apparently not made available during the Commission investigation. For example, a Core Office Log entry dated April 20, 2005 states that "V. Young is to remain in wheelchair at all times as per Dr [name redacted]." **Exhibit 38** at Bates 9947 (emphasis added). See also, **Exhibit 31**, June 24, 2003 report (Bates 8815): Staff person found Valerie in wheelchair, unable to stand up.

The <u>available</u>[1] evidence is not ambiguous: Valerie was spending extended periods of time in her wheelchair or otherwise sitting and lying down because of medication sedation to control behavior, rather than physically incapacity.

In a Special Case Conference held on April 20, 2005 the Treatment Team noted that the "physician feels that the most recent fall are contributed [sic] to <u>medications which are sedating</u>" (emphasis added) and recommended "the *continued use* of a wheelchair" for all mobility needs. **Exhibit 7** at Bates 7744 (emphasis original). An Occupational Therapy Note dated April 27, 2005 described Valerie as arriving "lethargic and was sliding forwards in the folding wheelchair." **Exhibit 51** (Bates CQC197). The Core Office Log notes include a direction that "V. Young is to remain in wheelchair <u>at all times</u> per Dr. [name redacted]" **Exhibit 38** at Bates 9947 (emphasis added).

The overuse of medication was a long-standing issue in Valerie's care. In **September 2004**, defendant Dr. Milos ordered a psychiatry consult finding that Valerie appeared "increasingly sedated, sleeping most of the time, [with reduced] ability to participate in daily activities. **Exhibit 10**, Psychiatry Consultation (Bates CQC138). In June 2003, an incident occurred where a BDC staff person reported that even though Valerie was consistently found to be physically "fully ambulatory" (even in the last few weeks of her life, <u>see</u> **Exhibit 33**):

> at 3:00 when I came to work I found [Valerie Young] in a whellchair [sic] I tried to take her out the chair but <u>she cannot stand up alone</u>, and have a hard time taking steps and will slide to the floor <u>she cannot walk</u>.
>
> **Exhibit 31**, June 24, 2003 Report of Occurrence (emphasis added)

---

[1] As discussed in great detail in this Memorandum, defendants caused hundreds of pages of material evidence to spoliation, evidence relating directly to Valerie's level of activity during the last months of her life.

We bring to the Court's attention that the use of medication in doses that interfere with a mentally retarded resident's daily living activities violates the applicable standards of care as a matter of law. <u>See</u> Requirements for States and Long Term Care Facilities, Conditions for Participation for Intermediate Care Facilities for the Mentally Retarded at 42 CFR §483.450(e)(1). <u>See also</u>, 14 NYCRR §633.17(11) mandating that "special attention" be given to individuals receiving psychotropic medication "to detect and prevent possible medical problems."

Dr. Milos was himself well-aware that the medication prescribed to Valerie caused sedation as a side effect. **Exhibit 22** Milos Deposition at pp. 50-51 and 130-131.

This action was brought by Mrs. Young personally and as administrator of the Estate, Sidney Young (Valerie's brother) and Loretta Lee (Valerie's sister) seeking damages for pain and suffering caused by defendants' grossly substandard care of Valerie ultimately leading to and causing Valerie's death, and for loss of companionship and familial relations. Claims were brought pursuant to the Americans with Disabilities Act, §504 of the Rehabilitation Act and for the violations of rights secured by the Fourteenth Amendment to the United States Constitution. <u>See generally</u>, **Exhibit 8**, Complaint.

**B.    Procedure Relevant to this Opposition**

As of the date of this motion, the parties have completed document discovery, all parties have been deposed and the parties but expert discovery has been suspended. The plaintiffs filed a motion seeking sanctions as the result of defendants admitted spoliation of Special Observation Log Books that detailed the decedent's level of activity and described that activity in the months prior to her death. See Exhibit 45 Memorandum of defendant Ferdinand (stating that staff must record what Valerie is doing every fifteen minutes); **Exhibit 39** and **Exhibit 40** (four pages of Special Observation Log Books extant).

As detailed below, during the course of this litigation defendants' counsel unambiguously assured plaintiffs' counsel that all documents were produced. Nonetheless, after a laborious review of the over 10,000 pages of documents produced and careful examination of references therein, it became absolutely clear that the defendants have omitted material evidence prejudicing plaintiffs' ability to prepare their prima facie case and oppose this summary judgment motion.

**(i)    In their initial disclosure, interrogatory answers and production responses, defendants failed to identify, did not produce and omitted any reference to the 15-Minute Checks Log Books**

The defendants served their initial disclosure pursuant to Fed. R. Civ. P. Rule 26(a)(1) on or about October 9, 2007. **Exhibit 15**, Initial Disclosure. Defendants Initial Disclosure at ¶2 purports to describe documents "relevant to disputed facts" but entirely fails to indentify and omits any reference to the 15-minute checks logs.

Plaintiffs served their First Interrogatories and Requests for Production to which defendants made an initial response on about November 30, 2007 by service of their Answers to Interrogatories and Production Response. **Exhibit 15**, Defendants' Interrogatory Answers and Production Response dated November 30, 2007. In their Interrogatory Answers the defendants declined to identify any documents, but instead referred the plaintiffs to documents separately produced, apparently pursuant to Fed. R. Civ. P. Rule 33(d). See Declaration of Jose L. Velez, dated March 17, 2008 at ¶8, previously filed with this Court and docketed as Document 17.

The Production Responses were made with reference to demands for documents for the files of the plaintiffs' decedent from January 1, 2000 through the date of her death or the present (with reference to any investigation of her death). See generally, **Exhibit 15** at pages 8-11 (Production Responses, quoting the demands).

The Interrogatory Answers did not identify or make reference to the 15-minute checks logs. The Production Responses did not identify or mention the 15-minute checks logs and they were not produced. The responses merely referred the plaintiffs to approximately nine thousand pages of documents separately produced[2].

**(ii)    Defendants forcefully and definitively stated that all documents have been produced throughout the course of discovery**

Defendants, by counsel, on multiple occasions informally and on the record stated definitively to plaintiffs' counsel that all documents relating to Valerie's care had been. Statements made on the record by the defendants' counsel making those assurances throughout the depositions taken in this case, in addition to off-the-record assurances made by telephone, representations in formal discovery responses and in a sworn statement to this Court submitted in opposition to plaintiffs' earlier motion to compel discovery. See generally, Declaration of Jacques Catafago, Esq. submitted herewith.

In his **March 17, 2008** sworn statement filed with this Court, the Assistant Attorney General stated that "defendants have produced exactly 10, 464 pages of documents … <u>which are all of the documents identified by defendants</u> as being in their possession that are responsive to the discovery requirements under the Fed. R. Civ. P. and plaintiffs' discovery requests." Declaration of Jose L. Velez, dated March 17, 2008 at ¶5 (emphasis added), previously filed with this Court and docketed as Document 17.

---

[2] Of the 10,464 pages ultimately produced, approximately half were responsive to plaintiffs' demands, the balance (about 5,200 pages) were documents created *prior* to January 1, 2000, neither sought nor required and produced by defendants for no reason known to the plaintiffs.

On **March 27, 2008**, during the deposition of defendant Jovan Milos, Assistant Attorney General Velez stated: "I will say again that <u>we have produced all documents related to this case</u>." **Exhibit 22** Jovan Milos Deposition at page 157 (emphasis added).

On **April 7, 2008**, during the deposition of defendant Kathleen Ferdinand, Assistant Attorney General Velez stated: "<u>We produced the full medical records</u>." **Exhibit 20** Kathleen Ferdinand Deposition at page 189 (emphasis added).

On **April 8, 2008**, during the deposition of defendant Suresh Arya, Assistant Attorney General Velez made the following forceful representation that all documents have been produced:

> Mr. Catafago: I'm going to call for the production of that. According to my notes, those certifications were not produced.
>
> AAG Velez: Counsel, the full medical file was produced. Maybe you just need to make a second look, because it's 10,000 pages.
>
> **Exhibit 19**, Suresh Arya Deposition at page 75
>
> Mr. Catafago: So we ask for all records relating to [Valerie's] treatment.
>
> AAG Velez: And <u>all records were produced</u>.
>
> **Exhibit 19**, Suresh Arya Deposition at page 80 (emphasis added)

On April 18, 2008, during the deposition of defendant Gloria Hayes, in an extended colloquy between counsel, Assistant Attorney General Velez again assured plaintiffs' counsel that all documents relating to Valerie's care and treatment had been produced. **Exhibit 21**, Gloria Hayes Deposition at pages 163-167.

In response to queries from counsel during that deposition, the Assistant Attorney General stated on the record:

> AAG Velez:    If she [the witness] writes a memo, that goes into Valerie Young's records, <u>and all that has been produced</u>, counsel.
>
>                    *  *  *
>
> AAG Velez:    They [the documents] have been provided to you already. <u>You have everything</u> that was in the file.
>
> **Exhibit 21** Gloria Hayes Deposition at page 165 (emphasis added).

Therefore, the creation of the 15-minute checks log books was obscured by the defendants' failure to identify them in their initial disclosure pursuant to Fed. R. Civ. P. Rule 26(a)(1) and by the wholesale production of documents, including over five thousand pages of documents that were not the subject of any request. The Attorney General's Office subsequently repeatedly stated that all documents have been produced. The Attorney General omitted the fact that the 15-minute checks logbooks, evidence material to plaintiffs' prima facie case, had been destroyed or were otherwise subject to spoliation.

Thus the defendants have resisted every effort to identify and secure production of the log book comprising the 15-minute checks by burying the information amongst the thousands of pages of production and failing to identify the documents where required.

## <u>Argument</u>

### A.    Standards on this Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering the instant motion for summary judgment,

the Court must evaluate the evidence "in the light most favorable to the non-moving party."

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

**B.    Defendants failed to meet minimum professional standards in their care and treatment of Valerie Young, violating the Fourteenth Amendment**

Defendants argue on the motion that they met minimum professional standards primarily because during her last months Valerie was walked or "ambulated" regularly by staff and that therefore Valerie was not a person at risk for DVT. E.g., moving papers, Memorandum at page 10. The sole evidence in support of this contention are statements made by the defendants in the course of this litigation, that is, declarations submitted on this motion and during deposition testimony. Defendants are unable to point to even one document made contemporaneously with the events it purports to describe in support of the contention that Valerie there was any practice whatsoever by defendants to "ambulate" the decedent, Valerie Young, and even without the spoliated logs, there is abundant evidence that Valerie was primarily sedentary and thus at risk for DVT.

**(i)    Defendants failed to meet the applicable standard of care, requiring prophylactic measures for persons, such as Valerie Young, who are at risk of DVT by reason of inactivity**

Valerie Young died because of a Deep Vein Thrombosis caused by inactivity. **Exhibit 4** Autopsy Report, New York City Medical Examiner; **Exhibit 12** Death Transcript, New York State Department of Health. The applicable standard of care generally is as described by plaintiffs' expert, forensic pathologist Richard Bindie, MD. **Exhibit 30** (Opinion letter and curriculum vitae of Richard Bindie). Pertinent here is that inactivity is a risk factor for DVT, as indicated by the official findings as to cause of death. Persons in risk categories require screening and prophylactic care.

Valerie was resident in a developmental facility for the mentally retarded (ICF/MR). The

New York State Commission on the Quality of Care ("Commission") investigated Valerie's

death, found deficiencies and described that standards that should have been met (but were not)

and that should be put into place. Exhibit 34 Commission October 24, 2005 Final Determination

Letter; Exhibit 35 Letter from defendants' facility to the Commission agreeing to correct care

and treatment. Unfortunately, notwithstanding the agreement to institute corrective measures,

defendants never did so. **Exhibit 21** Statement on the Record, Hayes Deposition at pages 17 and

18.

Defendants, in their motion, do not (and cannot) dispute the applicable standards of care.

**(ii)    The available evidence demonstrates that Valerie Young was a person
at risk for DVT**

Even without the Special Observation Log Books, lost and destroyed by defendants, the

record of this case is replete with documents from which a jury could infer that Valerie was at

once both sedentary and that the defendants failed in their acknowledged obligation to put into

place and act upon a plan of prophylactic care.

Some of the many examples include: **Exhibit 7** Case Conference of April 20, 2005 (Valerie

to <u>continue</u> use of wheelchair for <u>all mobility</u> purposes); **Exhibit 40** Special Observation Log

pages for June 19, 2005 from 3:00 pm through 9:30 pm (Valerie sitting throughout that time until

she died); **Exhibit 51** Occupational Therapy Note of April 27, 2005 (Valerie was lethargic and

sliding forwards in a folding wheelchair and a <u>new</u> wheelchair was issued with a high padded

back and calf support among other features); **Exhibit 9** Physical Therapy Report May 2, 2005

indicating that Valerie is unable to walk without staff assistance; **Exhibit 53** Progress Notes,

March 14, 2005 – June 19, 2005 (no direction to walk Valerie, no indication that she was walking

independently); **Exhibit 53** at Bates 8188, Dr. Milos Progress Note of May 28, 2005, finding

"Venous insufficiency positional (<u>sitting in wheelchair</u>" (emphasis added); **Exhibit 38** Core Office Log Book March 21 – June 16, 2005 (no indication that staff were walking Valerie and especially at Bates 9947, direction that Valerie "is to remain in wheelchair at all times" as of April 20); **Exhibit 42**, Wing Log March 18 through June 23, 2005 (no indication that staff were walking Valerie and especially at Bates 10020, direction that Valerie "is to be in wheelchair at all times" as of April 20); **Exhibit 50** Nursing Notes March 16 – June 19, 2005 (no documentation of staff walking Valerie and noting she was using a wheelchair, Bates 8345 May 16, 2005 entry); **Exhibit 22** Milos Deposition at pg. 122 (Dr. Milos reviews the logbooks at the nursing station every day when he comes to BDC); **Exhibit 1** February 3, 2005 Adaptive Equipment Work Request, apparently for repair of wheelchair; **Exhibit 2** April 27, 2005 Emergency Adaptive Equipment Work Request for issuance of the new wheelchair (<u>see</u> **Exhibit 51** Occupational Therapy Note); **Exhibit 32** Annual IPP of April 21, 2004 (Bates 8042) noting that Valerie is now utilizing a wheelchair for transport until further notice (Bates 8047); **Exhibit 33** Annual IPP of April 13, 2005 (7681[3]) noting that Valerie is to use a wheelchair when she is unsteady (7629), for mobility and transportation (7633); **Exhibit 28** Viola Young Deposition at pp. 54:20, 56:20, 58:8-17, 60:22-24, 62:12-15, 104:11-105:18 (Valerie in wheelchair and no order for staff to walk her regularly, recounting communication with defendant Milos); **Exhibit 26** Loretta Lee Deposition at 30:11-13 (Valerie in wheelchair sitting); **Exhibit 27** Sidney Young Deposition at 41:17-22, 49:10-12, 50:13-15 (Valerie just sitting);  Defendants admit spoliation of the Special Observation Logs (15 minutes checks) that detailed Valerie's level of activity during 2005 (*e.g.*, **Exhibit 40**, extant log pages), <u>**see:**</u> Jose L. Velez, Esq. May 30, 2008 Declaration at ¶9, filed as Document 26; Uschakow Decl. at ¶ 32; Arya Decl. at ¶6; Williamson Decl. at ¶8; Ferdinand

---

[3] Bates 7681 is the first (attendance) page of the IPP and therefore the first page of the exhibit. This document was produced out of order.

Decl. at ¶27; Hayes Decl. at ¶10; Milos Decl. at ¶17 (all admitting that Special Observation Logs are no longer extant, providing no chain custody or any explanation of how these clinical records were lost; consistent with willful spoliation).

The evidence of record, even without the spoliated Special Observation Logs is replete with evidence from which a jury could infer that Valerie was at least in part lacking healthy mobility because she was not sleeping due to back pain and was sedated from the medications prescribed.

For example, **Exhibit 11** Radiology Consult and Report of May 2, 2005 (seen for pain, finding degeneration of spine, report initialed by Dr. Milos); **Exhibit 38** Core Office Log Book for March 21 through June 14, 2005 documenting lack of sleep at Bates 9920, 9922, 9927, 9932, 9933, 9938, 9940, 9961, 9963, 9974, 9963, 9972, 9923, 9924, 9937, 9942, 9957, 9958, 9960 and 9975; **Exhibit 42** Wing Log Book for March 18 through June 23, 2005 documenting lack of sleep at Bates 1006, 9979, 9981, 9983, 9986, 9987, 9988, 9991, 9993, 9994, 9996, 9998, 9999, 10002, 10005, 10006, 10007, 10008, 10009, 10010, 10012, 10013, 10014, 10017, 10018, 10019, 10019, 10023, 10025, 10027, 10029, 10031, 10031, 10032, 10033, 10034, 10034, 10034, 10035, 10036, 10038, 10041, 10042, 10043, 10043, 10044, 10045, 10046, 10047, 10049, 10050, 10051, 10053, 10054, 10055, 10056, 10056, 10057, 10058, 10058, 10059, 10060, 10062, 10064, 10065, 10067, and 10068; **Exhibit 53** Progress Notes at Bates 8186 (Milos April 20, 2005 entry noting sedation in morning hours), **Exhibit 7** April 20, 2005 Case Conference, recording physician's opinion that "falls are contributed to medications which are sedating" and observing that "when Valerie does not sleep the night before, her unsteadiness is more pronounced." (Bates 0010); **Exhibit 33** Annual IPP April 13, 2005 at Bates 7630 under the heading "Sleep Habits" docu-menting bouts of insomnia, Valerie is up at night fairly often, contributing to the morning "grogginess that has been noted." (Defendants Milos and Ferdinand in attendance, see Bates

7681); **Exhibit 50** Nursing Notes March 16 through June 19, 2005 at Bates 8349 (March 22 Note

documenting that Valerie "did not sleep for the entire night"), Bates 8347 (March 29 Note docu-

menting that Valerie "did not sleep all night"); **Exhibit 51** Occupational Therapy Note of April

27, 2005 (stating that "Valerie arrived lethargic and was sliding forwards in the folding wheel-

chair."); **Exhibit 22** Milos Deposition at pg. 122 (Dr. Milos reviews the logbooks at the nursing

station every day when he comes to BDC). Sedation and lethargy were long-standing issues

about which therefore defendants were aware of long before the conditions lead to Valerie's

death, *e.g.* **Exhibit 31** Incident Report of June 24, 2003 (Valerie found in wheelchair unable to

stand up, sliding on to the floor); **Exhibit 5** Case Conference July 14, 2004 (Valerie observed to

be unsteady and not sleeping at night, altering medication); **Exhibit 22** Milos Deposition at 50-

51, 130-1 (describing sedative medication side effects).

    **(iii)**   **Missing Documents**

    Currently pending before this Court is plaintiffs' motion for sanctions for defendants' spo-

liation of material evidence, that evidence being Special Observation Log Books recording

Valerie's activities every fifteen minutes, 24 hours each day, seven days a week. There are ap-

proximately four pages of those logs extant, submitted herewith as **Exhibit 39** and **Exhibit 40**.

    Plaintiffs hereby incorporate herein their pending motion for sanctions and the relief sought

therein into this Opposition. We respectfully submit that the spoliation of material evidence,

standing alone is sufficient to defeat this motion for summary judgment because a jury could in-

fer that the destruction or loss of those documents was deliberate as it is a remarkable

"coincidence" that the defendants' testimony would be addressed directly by those documents.

    We also refer this Court to the plaintiffs' Rule 56.1 Counterstatement and the Declaration of

Jacques Catafago, filed herewith, providing further discussion of the missing evidence.

**C.    Liability of the defendants**

The defendants have in unison submitted litigation statements asserting (without any documentary basis) that Valerie was not maintained in a sedentary state and that defendants did not fail to "ambulate" or walk her regularly. The fact that defendants submitted sworn statements that they made regular observation of Valerie establishes that they had notice of her condition, even though they clearly misrepresent their observations in their own defense.

**(i)    Defendant Jovan Milos**

Jovan Milos has acknowledged that he was the treating physician and it appears so from the record of this case. E.g., **Exhibit 53** Progress notes of Jovan Milos. Dr. Milos does not deny that he was the responsible physician and he apparently agrees that Valerie should not have been maintained in a sedentary or inactive state without also being walked or ambulated by staff. He does not, however, produce a single physician's order or other document in support of his contention that he met the applicable standards of care.

Dr. Milos merely parrots the defendants' script – that Valerie was not sedentary and that staff walked her regularly.

Because a jury could find that Valerie was maintain in a sedentary state on the documents that are extant (and find as well based upon spoliation of the Special Observation Logs), a jury could hold Dr. Milos liable for failing to exercise professional judgment (by failing to order that Valerie be ambulated) and failing to follow up to ensure that his (nonexistent) orders were followed by staff.

**(ii)    Defendants Ferdinand and Hayes**

Defendant Ferdinand was Valerie's Treatment Team Leader. Defendant Hayes was the Resident Unit Supervisor responsible for the conduct of staff on the unit where Valerie resided. Both of those defendants apparently agree that Valerie should not have been maintained in a sed-

entary or inactive state without also being walked or ambulated by staff. Like defendant Milos, Fernandez and Hayes in their defense also parrot the defendants' script – that Valerie was not sedentary and that staff walked her regularly. Incredibly, defendant Fernandez asserts that she directed staff (including defendant Hayes) to walk Valerie regularly, but submits no documentation for her supposed directions.

Because a jury could find that Valerie was maintain in a sedentary state on the documents that are extant (and find as well based upon spoliation of the Special Observation Logs), a jury could hold defendants Ferdinand and Hayes liable for failing to exercise professional judgment (by failing to order that Valerie be ambulated) and failing to follow up to ensure that his (nonexistent) orders were followed by staff.

**(iii)   Defendants Uschakow and Williamson**

Defendants Uschakow and Williamson assert that there is no liability because they had no "personal involvement" in the care or treatment provided to Valerie Young. However, personal involvement for supervisory officials is not limited to direct involvement. See *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 254 (2d Cir. 2001) (setting forth standards for personal involvement by a supervisory official) *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir. 1989) (direct participation not necessary to establish personal involvement).

A supervisory official may be deemed to have personal involvement where:

> (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*17*

*Johnson*, 239 F.3d at 254

These defendants by their own admission and on the findings of the Commission investigation of Valerie's death did not have in place a policy to prevent DVT, nor did they put such a policy in place subsequently. Specific to Valerie Young, both defendants admitted (and insisted) that they observed her.

Defendants Uschakow and Williamson also parrot the defendants' script – that Valerie was not sedentary and that staff walked her regularly.

Because a jury could find that Valerie was maintain in a sedentary state on the documents that are extant (and find as well based upon spoliation of the Special Observation Logs), a jury could hold defendants Uschakow and Williamson liable under the holding of *Johnson* for failing to remedy the circumstances and failing to have in place a suitable policy.

This Court should also note that as a matter of internal BDC regulations, defendant Williamson was the last custodian of the spoliated documents. **Exhibit 43** BDC Policy and Procedure Manual at Bates 1562.

**(iv)    Defendant Arya**

Based upon the depositions and document discovery, it appears that defendant Arya left the employ of the Brooklyn Developmental Center prior to the conduct that forms this Complaint, and that he had no subsequent contact with the other defendants concerning Valerie Young. Accordingly, plaintiffs do not oppose his dismissal from this case.

*18*

## <u>Conclusion</u>

This motion for summary judgment should be denied in its entirety as to all defendants, other than defendant Arya for the reasons set forth herein, in the sub judice motion for sanctions, the plaintiffs' Rule 56.1 Counterstatement and the Declaration of Jacques Catafago and exhibits submitted herewith.

Dated:   September 8, 2008

**Catafago Law Firm, PC**
and **Jonathan Bauer, Esq**.
Empire State Building
350 Fifth Ave. Suite 4810
New York, NY 10118
212-239-9669
212-239-9688 (fax)
catafagolaw@verizon.net

**s/**

By: Jonathan Bauer