```
 1

 2      UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
 3      -----------------------------------X
        Estate of VALERIE YOUNG, by VIOLA YOUNG,
 4      as Administratrix of the Estate of
        Valerie Young, and in her personal
 5      capacity, SIDNEY YOUNG, and LORETTA
        YOUNG LEE,
 6                       Plaintiffs,
                                          Index No.:
 7              vs.                       07CV6241

 8      STATE OF NEW YORK OFFICE OF MENTAL
        RETARDATION AND DEVELOPMENTAL
 9      DISABILITIES, PETER USCHAKOW,
        personally and in his official
10      capacity, JAN WILLIAMSON, personally
        and in her official capacity, SURESH
11      ARYA, personally and in his official
        capacity, KATHLEEN FERDINAND,
12      personally and in her official
        capacity, GLORIA HAYES, personally and
13      in her official capacity, DR. MILOS,
        personally and in his official capacity,
14
                         Defendants.
15      -----------------------------------X

16                       April 8, 2008
                         9:59 a.m.
17

18           Examination before trial of SURESH

19      ARYA, held at the offices of The Catafago

20      Law Firm, P.C., 350 Fifth Avenue, New

21      York, New York, pursuant to Notice,

22      before Wendy D. Boskind, a Registered

23      Professional Reporter and Notary Public

24      of the State of New York.

25
```

```
 1
 2     A P P E A R A N C E S:
 3
 4     THE CATAFAGO LAW FIRM, P.C.
 5     Attorneys for Plaintiffs
 6          Empire State Building
 7          350 Fifth Avenue
 8          New York, New York 10118
 9     BY:  JACQUES CATAFAGO, ESQ.
10          JCatafago@catafagolaw.com
11
12     STATE OF NEW YORK
13     OFFICE OF THE ATTORNEY GENERAL
14     ANDREW M. CUOMO
15     Attorneys for Defendants
16          120 Broadway
17          New York, New York 10271-0332
18     BY:  JOSE L. VELEZ, ESQ.
19          Jose.Velez@oag.state.ny.us
20
21     ALSO PRESENT:
22           PATRICIA PAWLOWSKI, ESQ.
23           Counsel's Office
24           Office of Mental Retardation
25            and Developmental Disabilities
```

5

```
 1                  Arya
 2    your attorney.  Can you do that, sir?
 3         A.    Yes.
 4               (Deposition Exhibit
 5         Plaintiffs' Arya 1, Notice to take
 6         the deposition of the Defendant
 7         Office of Mental Retardation and
 8         Developmental Disabilities, marked
 9         for identification, as of this
10         date.)
11         Q.    Let me just show you the
12    Notice to take the deposition of the
13    Defendant Office of Mental Retardation
14    and Developmental Disabilities.  It's
15    marked as Exhibit 1, Arya 1.
16               And I ask you, sir, do you
17    understand that you are here pursuant to
18    this notice as well as your own
19    individual capacity and official
20    capacity?
21         A.    Mm-hmm.
22         Q.    "Yes"?
23               MR. VELEZ:  You need to say
24         "Yes" or "No".
25         A.    Yes.
```

6

1              Arya
2    Q.   Okay.
3         MR. CATAFAGO:  Counsel, just
4    so we establish, he is here under
5    FRCP 30(b)(6) --
6         MR. VELEZ:  That's correct.
7         MR. CATAFAGO:  -- as well as
8    his individual and officer official
9    capacity.
10        MR. VELEZ:  That's correct,
11   counsel.
12        MR. CATAFAGO:  Thank you.
13   Q.   By whom are you presently
14   employed?
15   A.   New York State Office of
16   Mental Retardation and Mental
17   Disabilities, Hudson Valley DDSO.
18   Q.   In what capacity?
19   A.   Deputy director.
20   Q.   How long have you been --
21   A.   There since September --
22   Q.   2004?
23   A.   -- 2004.
24   Q.   And were you at BDC before
25   that?

51

```
 1                    Arya
 2           Plaintiffs' Arya 9, document, which
 3           is part of the policy and procedure
 4           manual at BDC, Bates stamped
 5           D 1605, marked for identification,
 6           as of this date.)
 7           Q.   I want to show you what's
 8      been marked as Exhibit 9 -- Arya Exhibit
 9      9, Bates stamped D 1605, and ask you
10      whether or not you recognize this
11      document.
12           A.   Yes.
13           Q.   Is this part of the policy
14      and procedure manual at BDC?
15           A.   Yes, it is.
16           Q.   And is it correct that the
17      nurse administrator was required to
18      report all pertinent matters to you, as
19      deputy director of operations?
20           A.   Yes, pertinent matters.
21           Q.   Do you recall any matters at
22      all that the nurse administrator reported
23      to you reported to you regarding Valerie
24      Young at any time?
25           A.   It's very difficult to
```

```
1                      Arya
2     remember those kinds of things, it
3     happened many many years.
4          Q.    Do you remember any?
5          A.    I -- it's very difficult to
6     say.
7          Q.    When would the nurse
8     administrator typically report something
9     to you?
10         A.    Anything that's unusual,
11    anything where she needed my support --
12    my assistance.
13         Q.    What kinds of things would
14    that be?
15         A.    Patient care, that's
16    something that they have difficulty in
17    getting consultants, they have
18    difficulty -- if they need more staffing,
19    yes, that's....
20         Q.    How often did you get such
21    communications from the nurse
22    administrator while you were there, as
23    deputy director?
24         A.    It can be any day, two times
25    a day --
```

53

1              Arya
2      Q.   So some days it was three
3   times a day?
4      A.   Sometimes it was three times
5   a day, on different occasions.
6      Q.   Approximately how many times
7   a year?
8      A.   I would not -- I wasn't 24-
9   hour on call, they used to call me at
10  home.
11     Q.   The nurse administrator.
12     A.   Yes, the nurse administrator,
13  clinical consultation.
14     Q.   Other than what you've
15  described, do you recall any specific
16  conversation you had with anyone
17  regarding Valerie Young at any time,
18  other than counsel?
19     A.   Lately, no.
20     Q.   Ever.
21     A.   What do you mean "ever"?
22          MR. VELEZ:  I will just
23     object, that's really very broad,
24     but --
25          MR. CATAFAGO:  Yes.

75

1                    Arya
2    need their help, so you take that
3    document to be billed.
4         Q.    Do you know if there were
5    such documents involving Valerie?
6         A.    She has to have Medicaid or
7    Medicare.
8         Q.    Do you know if she had it?
9         A.    Uh -- I cannot say what she
10   had, but yes, she had it.
11              Even if she did not have
12   regular, she would have emergency
13   Medicaid card, so that she will have
14   something.
15              MR. CATAFAGO:  I'm going to
16         call for the production of that.
17         According to my notes, those
18         certifications were not produced.
19              (REQUEST.)
20              MR. VELEZ:  Counsel, the full
21         medical file was produced.  Maybe
22         you just need to make a second
23         look, because it's 10,000 pages.
24              MR. CATAFAGO:  Yes, I have
25         10,000 pages, I'm telling you my

1              Arya
2       Q.   Right.
3       A.   -- there is the gray record,
4   there is blue, so different binders.  It
5   may not be part of her medical records.
6   The medical record is completely
7   different.
8            MR. CATAFAGO:  So we ask for
9       all records relating to her
10      treatment.
11           (REQUEST.)
12           MR. VELEZ:  And all records
13      were produced.
14      Q.   And this is not something
15  that's destroyed, right --
16      A.   No.
17      Q.   -- this is something
18  maintained?
19      A.   It's currently kept.  The old
20  ones are destroyed.
21      Q.   How often are they destroyed?
22      A.   Until the new one is placed,
23  then you don't need the old one.
24      Q.   How --
25      A.   It's ongoing current