1

1

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - -x

5    Estate of VALERIE YOUNG, by VIOLA
     YOUNG, as Administratrix of the
6    Estate of Valerie Young, and LORETTA
     YOUNG LEE,
7
                         Plaintiffs,
8
             -against-
9
     STATE OF NEW YORK OFFICE OF MENTAL
10   RETARDATION AND DEVELOPMENTAL
     DISABILITIES, PETER USCHAKOW,
11   personally and in his official
     capacity, JAN WILLIAMSON, personally
12   and in her official capacity, SURESH
     ARYA, personally and in his individual
13   capacity, KATHLEEN FERDINAND,
     personally and in her official
14   capacity, GLORIA HAYES, personally
     and in her official capacity,
15   DR. MILOS, personally and in his
     official capacity,
16
                         Defendants.
17
     - - - - - - - - - - - - - - - - - - - -x
18
                   75 Morton Street
19                 New York, New York

20                 April 18, 2008
                   10:25 A.M.
21

22

23

24

25

2

```
 1
 2       DEPOSITION of GLORIA HAYES, one of the
 3  Defendants in the above-entitled action,
 4  held at the above time and place, taken
 5  before Gretchen A. Milton, a Shorthand
 6  Reporter and Notary Public of the State of
 7  New York, pursuant to the Federal Rules of
 8  Civil Procedure, Notice and stipulations
 9  between Counsel.
10
11
12             *     *     *
13
14
15  APPEARANCES:
16
        CATAFAGO LAW FIRM, P.C.
17          Attorneys for Plaintiffs
            350 Fifth Avenue
18          New York, New York 10118

19      BY:  JACQUES CATAFAGO, ESQ.

20

21      STATE OF NEW YORK
        OFFICE OF THE ATTORNEY GENERAL
22      ANDREW M. CUOMO
            Attorneys for Defendants
23          120 Broadway
            New York, New York 10271-0332
24
        BY:  JOSE L. VELEZ, ESQ.
25
```

                                    3

 1

 2      APPEARANCES:

 3      (Continued)

 4
        STATE OF NEW YORK
 5          OFFICE OF MENTAL RETARDATION AND
            DEVELOPMENTAL DISABILITIES
 6              75 Morton Street
                New York, New York 10014
 7
        BY:  PATRICIA DELORY PAWLOWSKI, ESQ.
 8

 9

10

11              *     *     *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

17

```
 1              GLORIA HAYES
 2      A.   888 Fountain Avenue, Brooklyn,
 3   New York 11208.
 4           MR. VELEZ:  Counsel and I had
 5      discussion before we began this
 6      morning related to document requests
 7      made in prior depositions.  You
 8      requested handwritten notes from
 9      Dr. Milos, if there were any, as well
10      as any handwritten notes from the
11      members of the mortality review
12      conference.
13           It is my understanding that there
14      are no handwritten notes that have
15      been found related to those requests.
16           Now, with respect to the BDC
17      policy, if any, that has been
18      developed pursuant to Judith Baer's
19      letter of November 2005, I have been
20      informed that there is no formal
21      procedure which has been put in place.
22      Instead each individual consumer is
23      treated on a case-by-case basis.  Each
24      primary physician will put into effect
25      procedures regarding the treatment of
```

                                18

1              GLORIA HAYES
2       DVT individually.  Those are medical
3       instructions left by the physician,
4       and they are the medical procedures
5       that will be followed with respect to
6       patients at risk of DVT.
7           MR. CATAFAGO:  Thank you.
8           MR. VELEZ:  You are welcome.
9           MR. CATAFAGO:  Good morning,
10      Ms. Hayes.
11          THE WITNESS:  Good morning.
12          MR. CATAFAGO:  I'm going to ask
13      you some questions this morning.  If
14      at any time you don't hear me, or if
15      you don't understand the question, let
16      me know.  I will either rephrase or
17      repeat the question so it is clear to
18      you.
19          Unless you otherwise so state, I
20      am going to assume that you have heard
21      and that you understand the question.
22      I ask you to answer the questions to
23      the extent of your fullest present
24      recollection and ability, unless you
25      are directed otherwise by your

163

```
 1                GLORIA HAYES
 2    saw a memo that you had relating to
 3    Valerie?
 4        A.   The last time I saw one was the
 5    one I wrote instructing the staff on how
 6    to deal with her.
 7        Q.   When was that?
 8        A.   That was in 2005.
 9        Q.   Where do you keep those records?
10        A.   Where?
11        Q.   Yes.
12        A.   In my office.
13        Q.   How voluminous or expansive is
14    that file?
15        A.   Four or five pages -- probably
16    four or five pages.
17        Q.   Can you have someone fax that
18    over to us?
19             MR. VELEZ:  Are you asking about
20        memos?
21             All those memos ended up in
22        Valerie Young's file; right?
23             THE WITNESS:  No.  These were
24        memos that I personally wrote.
25        Q.   You didn't put those into
```

164

```
 1              GLORIA HAYES
 2    Valerie's file?
 3        A.   No, no, no.  I've got them.
 4             MR. VELEZ:  These are memos that
 5    you wrote?
 6             THE WITNESS:  Yes.
 7             MR. VELEZ:  Who did you write
 8    these memos to?
 9             THE WITNESS:  To the staff.
10             MR. VELEZ:  What happened to
11    those memos when you distributed them
12    to the staff?
13             THE WITNESS:  They were about
14    in-service training on how to deal
15    with her.  Like, for instance, that
16    people had to go with her into the
17    bathroom.
18             MR. VELEZ:  Are those records in
19    that ended up in the file?
20             MR. CATAFAGO:  I am asking the
21    questions here.
22        Q.   You never gave them -- whether or
23    not they ended up in the file --
24             MR. CATAFAGO:  She was supposed
25    to supply all documents.  They should
```

165

1         GLORIA HAYES
2    have been provided.
3         MR. VELEZ:  That is correct.  If
4    she writes a memo, that goes into
5    Valerie Young's records, and all that
6    has been produced, counsel.
7         MR. CATAFAGO:  Mr. Velez, if they
8    were provided to you, if you have
9    already produced them, if you want to
10   say that, fine, but I don't believe
11   that's correct.
12        They have not been provided.  If
13   you want to make that determination
14   and put it on the record, that's fine.
15   But she has now testified she has
16   documents that no one has produced.
17   As far as I understand it, she still
18   has them in her possession.
19        MR. VELEZ:  No, that's not
20   correct.  They have been provided to
21   you already.  You have everything that
22   was in the file.
23        MR. CATAFAGO:  They certainly
24   have been asked for.  I asked for
25   every single document that was in the

166

1              GLORIA HAYES
2     possession of all defendants.
3        Q.   You were asked to bring here
4     today every single document in your
5     possession.
6        A.   I'm sorry. I didn't understand
7     that. I am sorry.
8             MR. VELEZ: There's a
9     misunderstanding here.
10            MR. CATAFAGO: Then let's
11    straighten this out.
12       Q.   Did you produce them to your
13    attorneys?
14       A.   Everything I had was sent over to
15    the director's office.
16            MR. VELEZ: Jan Williamson.
17            MR. CATAFAGO: Okay.
18            MR. VELEZ: So they were
19    provided.
20       Q.   What exactly is meant by standing
21    orders to the staff?
22       A.   It's only what I wrote...
23       Q.   These three or four or five
24    pages, what was it that you wrote in those
25    three or four or five pages?

167

1          GLORIA HAYES
2     A.   I don't remember.  It wasn't
3  much.  I only have what I wrote...
4  everyone has what they wrote.  I have only
5  what I wrote...
6          MR. CATAFAGO:  Your position is,
7     counsel, it was produced?
8          MR. VELEZ:  That is correct.
9     Q.   Do you have any special license
10 or licenses in connection with your job?
11    A.   No.
12    Q.   Have you ever testified before?
13    A.   No.
14    Q.   Following the death of Valerie
15 Young, did anyone ask you for any
16 information at all about her?
17    A.   What sort of information?
18    Q.   Like about her treatment and
19 care, did anybody ask you about that,
20 whether Judith Baer, or Jan Williamson, or
21 somebody from the Commission on Quality of
22 Care?
23    A.   No.
24    Q.   Or Peter Uschakow?
25    A.   No.